UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHANIE TABOR, Individually And on
Behalf of All Others Similarly Situated

              Plaintiff,

.v.

BODISEN BIOTECK, INC., BO CHEN,
WANG CHUNSHENG, KAREN QIONG
WANG,YILIAN LAI, and KABANI & CO.,
INC.

              Defendants.

CIVIL ACTION NO.06-CV-13220 (VM)

## MEMORANDUM OF DEFENDANT KABANI AND COMPANY, INC. IN SUPPORT OF ITS MOTION TO DISMISS OR TO STRIKE ALLEGATIONS OF THE AMENDED COMPLAINT

**JONES HIRSCH CONNORS & BULL P.C.**
**Attorneys for Defendant**
**Kabani & Company, Inc.**
**One Battery Park Plaza**
**New York, New York 10004**
**(212) 527-1000**

**Of Counsel**
**Alan M. Gelb (AG 4254)**
**Rita W. Gordon (RG 4077)**

# TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Allegations of The Amended Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Concealed, Adverse Facts Concerning The Company. . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

     The Company's Relationship with New York Global Group ["NYCC"] and
     Benjamin Wei. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
     Failure to allege facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Delisting by AMEX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Allegations Against Kabani. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

The Disclosures Containing Alleged Inaccuracies Were Not Audited By Kabani. . . . . . . .7

1. The 2005 Form 10-KSB. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     a.  The Related Party Disclosure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
     b.  The Beneficial Ownership Disclosure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
     c.  The Internal Controls Disclosure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

2. The 2005 Form 10-KSB/A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

     a.  The Related Party Disclosure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
     b.  The Beneficial Ownership Disclosure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
     c.  The Internal Controls Disclosure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

3. The February 7, 2006 Form 424B1 Registration Statement. . . . . . . . . . . . . . . . . . . . . . .10
4. The August 10 2006, Form 424B3 Registration Statement. . . . . . . . . . . . . . . . . . . . . . .10
5. Quarterly Filings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.    **Plaintiffs Fails to Satisfy Any of the Elements of a Securities Fraud Claim Under**
    **Section 10(b) and Rule 10b-5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11**

     A.    The Failure to Allege Facts to Show Misrepresentation of the Financial
           Condition of the Company Mandates Dismissal of the First Count Against
           Kabini. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     B.    Kabani Cannot Be held Liable for Management Misrepresentation in
           Non-Audited materials. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

| II. | Kabani Is Not Liable Under 10(b) for Bodisen's Alleged Misrepresentation About Its Internal Controls. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17 |
|---|---|
| III. | Claims Against Kabani Based on the Amex Delisting Letters Should be Dismissed for Failure to State a Claim or, In the Alternative, Should Be Stricken under Rule 12(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19 |
| IV. | Broad Based Press Coverage of the Issues Alleged Operates to Require Dismissal of all Claims Against Kabani Because it Was Public Information . .22 |

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

# TABLE OF AUTHORITIES

*CASES*                                                                 *Page*

*Basic Inc. v. Levenson*, 485 U.S. 224, 248 (1998) . . . . . . . . .  . . . . . . . . . . . . . . . . . . . . 13,14, 26

*Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 44 (2d Cir.1991). . . . . . . . . . . . . .. . .1

*In re Elan Corp., 2004WL 1305846* (S.D.N.Y.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*In re Marsh and McLennan Companies, Inc. Securities Litigation*, 501 F. Supp.
2d 452, 478 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 19

*In re Merrill Lynch & Co. Inc. Research Reports Securities Litigation*, 218 F.R.D. 76, 78-79
(S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 21, 23

*In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp.2d 463, 472 n.5 (S.D.N.Y. 2004). . . . . . . . . .16

*In Re Ramp Corp. Securities Litigation*, 2006 WL 2037913 (S.D.N.Y.) . . . .11, 12, 13, 14, 15,18

*In re The Warnaco Group, Inc. Sec. Litig.,* 388 F. Supp.2d 307, 314 (S.D.N.Y. 2005). . . . . . . 16

*In re Winstar Communications*, 2006 WL 473885 (S.D.N.Y.). . .. . . . . . . . . . . . .15,16, 17, 18, 19

*In re Yukos Oil Securities Litigation*, 2006 WL 3026024 (S.D.N.Y.) . . . . . . . . . . . . . . . . .13, 23

*Lawrence v. Cohn*, 325 F.3d 141, 147 (2d Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 24

*Ledford v. Rapid American Corp.*, 1988 WL 3428 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lipsky v. Commonwealth United Corporations*, 551 F.2d 887, 893-94
(2d Cir.1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..12, 13, 21, 22

*Merrill Lynch & Co. v. Allegheny Energy, Inc.,* 229 FRD 441 & n10 (S.D.N.Y. 2004) . . . . . . 19

*Rothman v. Gregor,* 220 F. 3d 81, 88-89 (2d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc.*, 412 F.3d 103, 109
(2nd Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stoneridge Investment Partners, LLC. v. Scientific Atla*nta, 552 U.S. ___, 128
S.Ct. 761,769 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 22

*Wright v. Ernst & Young LLP.*, 152 F.3d 169, 175 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . 15, 16, 17

## *STATUTES*

15 USC § 78j(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passin.

17 CFR § 240.10b-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passin.

15 USC § 78u-4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

17 C.F.R. Part 210, Reg. § 210.1-01(u)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Sarbanes Oxley Act,15 USC § 7262 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12,18,19

15 USCA. §78y. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

68 FR 36636, SEC Release No. 33-8328 (June 5, 2003), 2003 WL21294970 *1. . . . . . . . .12, 18

## *Rules*

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 22

Fed R. Civ P. 12 (f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20

Fed R. Civ P. 9(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . .11, 12

FASB 57. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16,17

## Preliminary Statement

Kabani and Company, Inc. ("Kabani") is a firm of certified public accountants based in Los Angeles (AC 136).[1] Kabani has been added as a defendant under the FIRST CLAIM of the Amended Complaint alleging securities fraud (AC 189-199) in its capacity as auditor for Bodisen Biotech, Inc. ("Bodisen"). In particular, the pleading names Kabani based upon its audits of the Bodisen financial statements for years ended December 31, 2003, 2004 and 2005[2] (AC 139, 145). It identifies three specific issues as appearing in Bodisen public filings which it alleges Kabani was responsible:

- failure to disclose material related partly transactions with Bodisen consultant New York Global Group ("NYGG") and its principal Benjamin Wei;

- failure to review and reconcile Bodisen's shareholder ownership records to confirm or identify beneficial owners of 10% or more of its shares,

- failure to establish and maintain adequate internal controls

(AC 145, pp.66-67).

---

[1]   Reference to allegations in the Amended Complaint are designated by the prefix "AC" followed by relevant paragraph or page numbers.

[2]   In deciding a motion to dismiss, without converting the motion into one for summary judgment, the Court may consider "any written instrument attached to[the complaint] as an exhibit or any statements or documents incorporated in it by reference... as well as public disclosure documents required by law to be, and that have been, filed with the SEC... and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor,* 220 F.3d 81, 88-89 (2d Cir.2000) (internal citations omitted); *In re Elan Corp.,* 2004 WL 1305845 *6 (S.D.N.Y). The Court may also consider documents that, while not explicitly incorporated into the complaint, are "integral" to plaintiff's claims and were relied upon in drafting the complaint. *See Cortec Industries Inc. v. Sum Holding L.P.,* 949 F.2d 42, 44 (2d Cir.1991).

Copies of the publicly filed documents identified in the Complaint are annexed to the affidavit of Abdul Hamid Kabani CPA. References to these documents are designated as "Kabani Exhibit" followed by relevant exhibit numbers. Copies of newspaper articles quoted in the Complaint are annexed to the affidavit of Rita W. Gordon and are designated as "Gordon Exhibit" followed by relevant exhibit numbers.

In making its charges against Kabani, however, the FIRST CLAIM does not attack the accuracy of the financial disclosures of the audited financial statements, nor demonstrate any material misstatement in their presentation. It does not show that the related party, shareholder ownership or internal control issues of which it complains were part of the audited statements as to which Kabani opined. The complaint bundles these allegations into an attack, not on the audited financial statements, but on the "unqualified audit opinions" issued by Kabani with respect to the three years of Bodisen financial statements, charging failures by the auditors to comply with GAAP, or to perform its audit in accordance with GAAS as to these three specific subjects. (AC 144-145).

Kabani moves to dismiss the FIRST CLAIM under Rule 12(b) (6) Fed. R.C.P. for failure to state a claim, and under Rule 12(f) to strike the allegations of this pleading based upon so-called AMEX Delisting Letters which provide the "factual" support for the charges of misconduct concealed by auditing deficiencies. The bases of the Kabani motion may be summarized as follows:

a.      A 10 (b)(5) count against auditors for alleged securities fraud does not state a claim if it fails to allege material misrepresentations in the audited financial statements. Absent such demonstration, the quality of the audit is immaterial.

b.      The alleged related party, shareholder ownership and internal control discussions in the Bodisen public filings do not appear in the Kabani - audited materials reproduced in those filings, but in unaudited sections for which Kabani is not responsible. Kabani's unqualified audit opinions, which opine only on the content of the audited financial statements, cannot be attacked for alleged omissions or misstatements by management disclosures in unaudited filings.

c.      The basis alleged in the complaint for the three charges of "facts" allegedly concealed or

2

inaccurately disclosed, are (i) two letters from the American Stock Exchange ("AMEX") which discussed Bodisen's failure to meet listing requirements for its stock, and (ii) a series of articles which appeared in the New York Post during the Class Period which discussed in detail the allegedly concealed or inaccurately disclosed events. The AMEX letters, however, express only "beliefs" or "concerns" of the AMEX staff, rather than fact findings or determinations. As such they cannot support complaint allegations and/or should be stricken under Rule 12(f). The detailed press coverage confirms that the conduct and events complained of were not concealed, but instead were broadly disclosed to the public, and thereby provide bases for dismissal of claims of fraud.

d. Moreover, (i) the so called "concealed" relationships between Bodisen and its public relations consultancy were (i) publicly disclosed by various of the Bodisen filings, and (ii) did not provide a basis for "related party" disclosures by Kabani in any event, since outside consultants are not within the definition of "related parties" under governing accounting standards.

(ii) Kabani was not required to structure or audit Bodisen's internal controls under the Sarbanes-Oxley provisions which governed during the Class Period.

The FIRST CLAIM against Kabani should be dismissed under Rule 12 (b) (6) or, in the alternative, the allegations based on the AMEX Delisting Letters should be stricken under Rule 12 (f).

## ALLEGATIONS OF THE AMENDED COMPLAINT

The Amended Complaint description of PARTIES, includes the Lead Plaintiff (AC 6) Corporate Defendant (AC 7) [Bodisen], and Individual Defendants (AC8) – but does not include Kabani. Under the heading SUBSTANTIVE ALLEGATIONS, it provides an OVERVIEW OF

3

DEFENDANTS' FRUADULENT SCHEME (AC 13-18), but Kabani is nowhere mentioned.
The next following section is titled

## CONCEALED, ADVERSE FACTS CONCERNING THE COMPANY

### The Company's Relationship with

### New York Global Group ["NYGG"] and Benjamin Wei

AC 19 identifies NYGG as being "relied [on] heavily" by Bodisen "for purposes of public relations and the promotion of the company's securities in the U.S. market" and as engaged as consultants primarily on behalf of Chinese companies (AC19) The principal subject of AC 20-27, pp 6-14, is a series of articles published in the New York Post during the Class Period. Articles dated May 1, 2006, September 29, 2006, and October 9, 2006 provide extensive details of the Bodisen/NYGG/Wei relationships, and feature negative details as to the NYGG/Wei background and conduct. For example, the May 1, 2006 article reporting on NYGG "Touting Murky China Investments", describes "the doubtful value of the merchandise" NYGG was promoting, and efforts by Benjamin Wei "to keep both himself and regulatory skeletons in his closet hidden from view". The article explores the content of NASD records which show Wei's disciplinary history of being, fired, fined and "temporarily barred from the industry" (AC 21 p.6). The article disclosed that NASD records show he never applied for reinstatement as an NASD licensed member, and thus Wei had been barred from soliciting investments from the public, but observed that "it is hard to see how Wei was engaged in anything other than selling stock to potential investors... on behalf of Bodisen..." (AC 21, pp.6-7).

The September 29, 2006 New York Post article asserts Wei's "admission that he was instructed to conceal the relationship between NYGG and Bodisen" (AC 22.) An October 9, 2006 article (Gordon Exhibit "C") explained the NYGG/Wei activities for Bodisen and "several

4

Bodisen SEC filings" which had named NYGG "in a $300,000 contract to sell unregistered

Bodisen stock to investors in London early this year", and disclosed that NYGG earned

commissions on the sale of nearly $15 million worth of stock in Bodisen. (AC 24, p.12).[3]  This

article suggested that Bodisen stock might be delisted as a result of an ongoing cleanup program

at the AMEX. (Gordon Exhibit "C" at 1).

## Failure to allege facts.

The facts, if any, which constitute the related party, shareholder ownership and internal

control issues, are not alleged in the Amended Complaint. Instead, the principal source for these

charges appears in the complaint under the heading

## Delisting by AMEX,

detailed in AC¶¶ 28-34. An AMEX letter dated November 6, 2006, (described by a Bodisen

SEC filing as a "delisting letter") (AC 94) is quoted with respect to the Bodisen/NYGG

relationship and related issues of internal controls.

> Among other things, Amex believes that the Company made insufficient or
> inaccurate disclosure in its public filings with regard to its relationship with, and
> payments to a consultancy firm and its affiliates both prior to and subsequent to
> its listings on the Amex. Additionally, in the context of the Company's
> relationship with the consultancy firm, Amex expressed concern that the
> Company has internal control issues related to its accounting and financial
> reporting obligations. Prior to receipt of the letter from Amex, the Company
> publicly announced it had terminated its relationship with the consultancy firm.

The "belief" and "concern" expressed in the AMEX letter are described as relating to the

relationship with NYGG (AC 29, 34.) The reference to so called "internal control weaknesses"

is described as responsible for non-disclosure of beneficial stock ownership and the relationship

with NYGG/Wei. (AC 44, 84). The charges are in part based on an AMEX notice of March 22,

2007. (AC 30) That aspect of the notice, in turn, stated that it was "based on information

---

[3] The pleading also charges that Bodisen's use of the terms "organic" and "biotech" in describing its products, was
improper. (AC 25). That subject was examined at length by the Post article of September 29, 2006 (AC 26).

5

received by the Staff" which indicated that the Company "failed to consistently reconcile its shareholders ownership records with those of its transfer agent to ensure that its SEC filings and public disclosures were accurate." (AC 30, ¶D p.16). The nature of that "information" was not disclosed.

The Amex had no power to delist, however, and was required instead to apply to the SEC for that relief. Bodisen's delisting occurred due to its procedural failure to timely satisfy a compliance plan and not due to any adjudication or fact findings with respect to any of the alleged defects in disclosures (See Point III, *infra*).

## ALLEGATIONS AGAINST KABANI

The pleading asserts its claim against Kabani under the heading Defendant Kabani's Participation in the Fraud and its Scienter (AC p. 62). Plaintiffs sue Kabani for having provided unqualified Independent Auditor's Reports which were included in the SEC filings and publicly disseminated statements. (AC 137, 141-145).

The pleading sets forth no allegations to show that the audited financial statements were materially misstated, or that the presentation of the Bodisen financial information in these statements was inaccurate. Instead the pleading confines its critique to the audit opinions on the December 2003, 2004 and 2005 financial statements, on the ground that they "falsely represented that [the] financial statements were presented in conformity with GAAP when they were not...." (AC 140), and that Kabani failed to perform sufficient procedures in accordance with GAAS (AC 142). These contentions were reiterated in AC 145(a) and (b) which identified the three categories of alleged failed disclosure.

Under the heading "The Failure to Disclose Related Party Transactions" (AC p. 67) – the pleading alleges "Kabani knew or recklessly disregarded the Company's relationship with New

6

York Global, the consultancy firm...." (AC 148); that Kabani ignored "red flags" which would have shown management's failure to (i) review and reconcile its shareholder ownership records with those of its transfer agent to ensure that Bodisen's SEC filings and public disclosures were accurate, and (ii) to correct internal control defects. Plaintiffs charge that assessment of management's "lack of integrity" (AC 154) should have led Kabani to recognize Bodisen's consultant's "known history of securities law violations", including Wei's suspension and fines by the NASD and being barred from registration as a broker dealer or investment advisor by the Oklahoma Department of Securities. Plaintiffs complain that Bodisen "concealed and failed to disclose the true adverse material facts set forth at ¶¶ 19-34" (i.e. the "facts" disclosed in the press articles and the AMEX delisting letters). Kabani's audit opinions are attacked for these same failures of disclosure. (AC 72, 84).

## THE DISCLOSURES CONTAINING ALLEGED INACCURACIES WERE NOT AUDITED BY KABANI[4]

The Complaint alleges that Kabani's "Report[s] of Independent Registered Public Accounting Firm" for 2003, 2004, and 2005 (collectively, the "Audit Reports") were materially false and misleading because Bodisen had failed to disclose its relationship with NYGG and inaccurately reported as to its beneficial ownership and internal controls. (AC 137, 140-145)

However, none of the alleged misrepresentations or omissions on these subjects was made by Kabani or contained in the portions of Bodisen's SEC filings audited by Kabani.

### 1. The 2005 Form 10-KSB

The 2005 Form 10-KSB (Kabani Exhibit "1") constitutes Bodisen's annual report for the year ended December 31, 2005 filed with the SEC on March 31, 2006.

---

[4] The SEC filings alleged to contain these misrepresentations or omissions follow at 1-5.

The document is comprised of three Parts and 14 ITEMS. Only one of these, PART II, ITEM 7, entitled "Financial Statements and Supplementary Data", contains the 2005 Audit Report and financial statements for the year ended December 31, 2005 which were audited by Kabani. The Audit Report, dated February 22, 2006, is found at Kabani Exhibit "1" p. 24 of 69; the audited financial statements follow commencing with 25 of 69.[5]

The other sections of the Form 10-KSB Items 1-6 and 8 -15 contain unaudited information provided by the Company. Thus the three alleged inaccurate disclosures concerning related parties, beneficial ownership and internal controls, were not part of financial statements, and instead were management disclosures located in unaudited portions of the 10-KSB filing.

**a.  The Related Party Disclosure** appears in the Form 10-KSB at Part III, ITEM 12 (Kabani Exhibit "1"at p. 66 of 69) entitled CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS    None.; **b. The Beneficial Ownership Disclosure** appears in the Form 10-KSB at Part III, ITEM 11 (Kabani Exhibit "1" at p. 64 of 69), entitled "SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT AND RELATED STOCKHOLDER MATTERS";  **c. The Internal Control Disclosure** in the Form 10-KSB appears in PART II, ITEM 8A (Kabani Exhibit "1"at p. 58 of 69), entitled "CONTROLS AND PROCEDURES".

Thus, all of the allegedly inaccurate disclosures in the 2005 Form 10-KSB were unaudited management representations and not part of the audited financial statements.

### 2. The 2005 Form 10-KSB/A

The 2005 Form 10-KSB/A  (Kabani Exhibit "2") constitutes Bodisen's Amendment No. 1 to the annual report for the year ended December 31, 2005, filed with the SEC on August 2,

---

[5]  The 10-K filings bear page numbers at the upper right hand corners of the Kabani Exhibits.  References to those page numbers are included for purposes of identification.

2006. The document is comprised of three Parts and 14 ITEMS. (p.3 of 74) Only one of these, PART II, ITEM 7, entitled "Financial Statements and Supplementary Data", contains the 2005 Audit Report and financial statements for the year ended December 31, 2005 which were audited by Kabani. The Audit Report, dated February 22, 2006 (except for a financial statement schedule dated June 6, 2006), is found in Kabani Exhibit "2" at p. 27 of 74; the audited financial statements follow commencing with p. 28 of 74.

The other sections of the Form 10-KSB/A Items 1-6 and 8 -15 contain unaudited information provided by the Company. Thus the three alleged inaccurate disclosures concerning related parties, beneficial ownership and internal controls, were not part of financial statements and instead were management disclosures located in the unaudited portions of the 10-KSB/A filing.

a.      **The Related Party Disclosure** appears in the Form 10-KSB/A at Part III, ITEM 12 (Kabani Exhibit "2"at p.71 of 74) entitled CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS  None ;  **b. The Beneficial Ownership Disclosure** appears in the Form 10-KSB/A at Part III, ITEM 11 (Kabani Exhibit "2" at p. 70 of 74), entitled "SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT AND RELATED STOCKHOLDER MATTERS"; **c. The Internal Controls Disclosure** disclosure in the Form 10-KSB/A appears in PART II, ITEM 8A (Kabani Exhibit "2"at p. 64 of 74), entitled "CONTROLS AND PROCEDURES".

Thus, all of the allegedly inaccurate disclosures in the 2005 Form 10-KSB/A were management representations and not part of the Kabani audited financial statements.

9

**3. The February 7, 2006 Form 424B1 Registration Statement**

Bodisen's Registration Statement (Form 424B1) in connection with the issue of 1,643,836 shares of common stock, and Admissions to trading on AIM of the London Stock Exchange, dated February 3, 2006, was filed with the SEC on February 7, 2006. The document contained Kabani's Audit Report for the years ending December 31, 2003 and 2004 (Kabani Exhibit "3" at 69 of 142).

The beneficial ownership disclosure (AC at p. 28) appears in the Form 424B1 headed ADDITIONAL INFORMATION in Part. VI. ¶ 5 of Part VI is entitled Interest in Share Capital (Kabani Exhibit "3" at p. 121 of 142). The complaint concedes that Financial Statements included in this filing are stated to be unaudited (AC 55, p.28). This disclosure was not part of audited financial statements, and instead was an unaudited management disclosure.

**4. The August 10, 2006 424B3 Registration Statement**

Bodisen's Registration Statement (Form 424B3) in connection with the sale of 513,512 shares of common stock, dated August 10, 2006,was filed with the SEC on August 11, 2006. (Kabani Exhibit "4"). The document contains Kabani's Audit Report on the Bodisen consolidated balance sheet for 2005 and consolidated statements for years 2005 and 2004, at p. 71 of 108.

The beneficial ownership disclosure (alleged at AC 81) appears in a section entitled "Security Ownership of Certain Beneficial Owners and Management" (Kabani Exhibit "4" at p. 38 of 108). This disclosure by management was not part of Kabani audited financial statements.

**5. QUARTERLY FILINGS**

Plaintiffs allege (AC 32,38) that the quarterly reports contained inaccurate

10

internal controls disclosures. However, the quarterly reports each contained an Item 3, "Control and Procedures". None contain any such information audited by Kabani.[6] See Kabani Exhibit "5" The Third Quarter 2005 Form 10-QSB at p. 11 of 14; Kabani Exhibit "6" The First Quarter 2006 Form 10-QSB at p. 36 of 39; Kabani Exhibit "7" The Amended First Quarter 2006 Form 10-QSB/A , at p. 37 of 40; Kabani Exhibit "8" The Second Quarter 2006 Form 10-QSB, at p. 39 of 43.

The financial statements audited by Kabani made no disclosures on the issues complained of, much less false ones. The First Claim should be dismissed.

## ARGUMENT

### I. Plaintiffs Fail to Satisfy Any of the Elements of a Securities Fraud Claim Under Section 10(b) and Rule 10b-5

To state a claim for securities fraud under Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (collectively "10(b)"), a plaintiff must allege that "the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused injury to the plaintiff." *Lawrence v. Cohn*, 325 F.3d 141, 147 (2d Cir.2003); *Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc.*, 412 F .3d 103, 109 (2d Cir.2005); *In re Ramp Corp. Securities Litigation*, 2006 WL 2037913 at *7 (S.D.N.Y.). Section 10(b) claims sound in fraud, and must satisfy the pleading requirements of Rule 9(b) Fed.R.Civ.P and the Private Securities Litigation Reform Act of 1995, 15 U.S .C. § 78u-4 to state the claim "with particularity". *In re Ramp Corp. Securities Litigation*, 2006 WL 2037913 at *7 (S.D.N.Y.). A plaintiff's failure to

---

[6] Financial Statements included in the Quarterly SEC filings in Kabani Exhibit 5-8 were specifically identified as unaudited in each document.

satisfy any one of the elements of a 10(b) claim requires dismissal for failure to state a claim.

*Stoneridge Inv. Partners, LLC v. Scientific Atlanta, 552 U.S.* ___ , 128 S.Ct. 761, 769 (2008).

Here, plaintiffs' First Count against Kabani should be dismissed for failure to satisfy any

of the elements of a securities fraud claim.

- The gist of the claim against Kabani is that its audit opinions on the Bodisen financial statements are false in that they were not in compliance with GAAS, but does not allege a material false statement of Bodisen's financial condition. Such a count must be dismissed. Absent material misstatements of financial condition, the quality of the audit is immaterial. *In re Ramp Corp. Securities Litigation*, 2006 WL 2037913 at *8, 11 (S.D.N.Y.).

- Plaintiffs fail to show that Kabani made (i) a statement (ii) that is false, and thus do not satisfy the first two essential elements of a 10(b) claim. An auditor's unqualified audit report is addressed only to the four corners of the audited financial statements. The First Count is based on (i) alleged inaccuracies in unaudited portions of public filings by Bodisen for which Kabani is not responsible, as to which Kabani made no "statement" at all, much less a false one. *In re Ramp Corp. Securities Litigation*, 2006 WL 2037913 at *8, 11 (S.D.N.Y.); and (ii) is based upon mere expressions of "belief" and "concern" by Amex staff, rather than allegations of fact. Allegations of that nature cannot support a claim for fraud, and must be stricken. *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893-94 (2d Cir.1976); *In re Merrill Lynch & Co. Inc. Research Reports Securities Litigation*, 218 F.R.D 76, 78-79 (S.D.N.Y. 2003).

- Plaintiffs fail to satisfy the scienter element by failing to allege fraud with the particularity required by Rule 9(b). *In re Ramp Corp. Securities Litigation*, 2006 WL 2037913 at *7 11 (S.D.N.Y.). Nor have they alleged facts to show that Kabani had an intent to defraud or was reckless in failing to report on Bodisen's internal controls, related parties, or issues with regard to beneficial ownership. Those disclosures were not part of Kabani's audit responsibility. Moreover, there were no related party transactions to report, since NYGG was not a related party under SFAS No. 57, and Kabani had no duty to report under §404(b) of the Sarbanes-Oxley Act during the Class Period. (68 FR 36636 (SEC Release No.33- 8328 (June 5, 2003), 2003 WL21294970 at *1).

- "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the §10(b) private cause of action. It ensures that, for liability to arise, the "requisite causal connection between a defendant's misrepresentation and a plaintiff's injury" exists as a predicate for liability." *Stoneridge Inv. Partners, LLC v. Scientific Atlanta,* 128 S. Ct. 761, 769 *552 U.S.* ___ (Jan. 2008). Here, plaintiffs fail to satisfy the reliance element because the broad press coverage, of the issues discussed at length in the Complaint were in the public domain during the Class Period and

"neutralize[d]" the alleged misrepresentations and omissions. *In re Yukos Oil Co. Securities Litigation*, 2006 WL 3026024 at * 22 (S.D.N.Y.).

- Plaintiffs fail to satisfy the injury requirement because the press coverage "sever[ed] the link between the alleged misrepresentation and ... the price received (or paid) by delisting the plaintiff[s]," because "the basis for finding that the fraud had been transmitted through market price would be gone." *Basic Inc. v. Levinson,* 485 U.S.224, 248 (1988).

## A. The Failure to Allege Facts to Show Misrepresentation of the Financial Condition of the Company Mandates Dismissal of the First Count Against Kabani

The FIRST CLAIM does not allege facts to show that the financial condition of Bodisen

was materially misrepresented by the Kabani audited financial statements for 2003, 2004, or

2005. Instead, the pleading alleges that the unqualified audit opinions for those years' financial

statements were false in representing that each was presented in conformity with GAAP, due to

failure to perform audit procedures in accordance with GAAS. (AC 140-145). The basis alleged

for these conclusions was identified in AC 58, 72, 84, 145 and included management's "heavy

reliance on and questionable ties to" a controversial promoter of securities sales (AC 23), and

"red flags" (AC 151, 153) which should have disclosed "management's lack of integrity" (AC

154), including associations with its public relations consultant, whose principal had been

suspended and fined by the NASD. (AC 154). The law is, however, clear that

[w]ithout a material false statement in a company's financial statements, the quality of the audit is immaterial. Compliance with GAAS is relevant only insofar as it provides the investing public with a level of assurance that the financial statements accurately reflect the company's financial position when measured against []GAAP. If the financial statements accurately disclose the financial condition when measured against GAAP, then the investing public has received all that it is entitled to receive from the auditor certifying its audit of those financial statements.

*In re Ramp Corp. Securities Litigation*, 2006 WL 2037913 at *8 (S.D.N.Y.)

13

_Ramp_ was a securities class action under 10 (b) and 20(a) of the 1934 Exchange Act against officers of a corporation which had filed in bankruptcy and the company's outside auditors BDO Seidman LLP. In _Ramp_, as here, plaintiffs failed to allege material misstatements of the financial statements in its 10(b) claim, and instead challenged the unqualified audit opinions in the financial statements for 2003 and 2004. They alleged that "the auditor's certification of those financial statements contained a misstatement when the certifications asserted that [the auditor] had conducted its audits in compliance with GAAS." _Id._ at *8. Much as the amended complaint does here, the plaintiffs focused on certain "red flags" which should have alerted the auditor to management's lack of integrity, including "the illegal private placements, the turnover in membership of the Audit Committee and the CFO and CEO positions, and Ramp's lack of internal financial controls." _Id._

Finding that plaintiffs' theory of liability rested on their assumption that "an auditor's certification that a company's financial statements comport with GAAP, is also a representation about the integrity of management," _id._ at *9, the _Ramp_ court disagreed, noting that the auditor had made no statements about management's integrity, nor did GAAS require such a statement. _Id._. Thus the court dismissed the securities fraud claim with prejudice, holding that "plaintiffs' failure to identify a material misrepresentation of Ramp's financial condition in its audited financial statements for the years 2003 and 2004 requires dismissal of the Section 10(b) claim against [the auditor]". _Id._

Having failed to identify a misstatement in the financial statements, much less one caused by error or fraud, plaintiffs have not adequately pleaded that the auditor's representation that its audit complied with GAAS was false

_Id._ In recounting this analysis, the court rejected the identical theory on which the count against Kabani is based.

14

In certifying the audits, [the auditor] did not vouch for the integrity of management; its certification was addressed instead to the degree to which those financial statements comported with GAAP when audited with the degree of care mandated by GAAS

*Id.* at *11.

Absent facts to establish material misstatements of Bodisen's financial condition in the

Kabani audited financial statements, there can be no element of scienter, since Kabani made no

false statement in its audit opinion. *In re Ramp Corp. Securities Litigation*, 2006 WL 2037913 at

*11. As the *Ramp* court opined "it is unnecessary to reach plaintiff's' failure to "plead [] scienter

with the particularity required by law" since

plaintiffs have failed to identify a material misrepresentation that can properly be attributed to BDO, it is nigh impossible to analyze the extent to which the Complaint adequately alleges that BDO knew or was reckless as to the fraudulent nature of an actionable misrepresentation.

The FIRST CLAIM must be dismissed.

## B.      **Kabani Cannot Be Held Liable For Management Misrepresentations in Non-Audited Materials**

The aim of the complaint allegations against Kabani is to hold the auditor liable for

allegedly false statements made by Bodisen management in sections of its public filings which

did not include presentations audited by movant. Liability under 10(b) may not be imposed on

such a basis.

To impose liability under §10 b, that particular " 'defendant must actually make a false or misleading statement... Anything short of such conduct is merely aiding and abetting and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b) " . Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998)]... In re Winstar Communications, 2006 WL 473885 (S.D.N.Y) *9.

Here, the allegedly false or misleading filings are found in unaudited sections of the Bodisen

SEC filings of 10-K or press releases. No such unaudited statements can be attributed to Kabani.

Plaintiffs...attempt to predicate [auditor] liability on statements in the unaudited sections of [company's 10-K] SEC filings. To the extent that certain statements in the unaudited

portions of [company's] 10-K filings are misleading..., those statements are not attributed to the company's auditor.

In re Marsh and McLennan Companies, Inc. Securities Litigations, 501 F. Supp. 2d 452, 478

(S.D.N.Y. 2006) – dismissing 10 (b) (5) claims against Deloitte & Touche. Judge Kram

explained:

10-K filings are comprised of various components, including audited financial statements, the audit opinions themselves, and unaudited sections such as annual reports and management's discussion and analysis. Misrepresentations in these unaudited sections are not attributable to D & T. See *In re The Warnaco Group, Inc. Securities Litigatio.*, 388 F. Supp.2d 307, 314 (S.D.N.Y.2005) ("liability may not generally attach to a public auditor for unaudited public statements the company made") (citing *Wright v. Ernst & Young LLP*, 152 F. 3d 169, 175 (2d Cir. 1998)): *In re Philip Servs. Corp. Sec. Litig.,* 383 F. Supp.2d 463, 472 n. 5 (S.D.N.Y. 2004) (auditor "can be held liable under Section 10 (b) only for its own misrepresentations concerning [the defendant's] financial statements"). (emphasis added)

See also, Winstar Communications, supra at *9 – dismissing 10(b) claim against auditors

(Plaintiffs cannot premise their causes of action against [auditors] on the unaudited information

contained in the quarterly financial statements.) As *Wright* explained, a secondary actor (such as

Kabani) cannot incur primary liability under the Act for a statement it did not make, which was

not attributed to it at the time of its dissemination. To do so would eliminate the reliance

requirement of 10 (b). *Id* at 175, 176 (press release not attributed to auditor could not provide

basis for its 10 (b) liability.) Thus, a 10(b) claim cannot arise out of Kabani's unqualified audit

opinions, or out of the management's unaudited statements not attributable to Kabani. The First

Claim must be dismissed.

The claim of failure to make "related party disclosures because NYGG and Wei were

not, in any event, related parties to Bodisen. SEC Regulation S-X governs accounting standards.

(17 C.F.R Part 210, Reg. § 210.1-02(u)). The Glossary in Appendix B ¶(f) of FASB No. 57

defines "related parties" as

16

Affiliates of the enterprise...principal owners of the enterprise; its management; members of the immediate families of principal owners of the enterprise and its management; and other parties with which the enterprise may deal if one party controls or can significantly influence the management or operating policies of the other....

FASB No 57, App. B: Glossary, (f). No facts are alleged in the Complaint to show that Wei or

NYGG were "related parties" by any aspect of this governing standard. In particular, the

pleading is specific in describing NYGG/Wei as being relied upon by Bodisen "for purposes of

public relations and the promotion of the company's securities in the U.S. market". (AC 19).

No facts are alleged to demonstrate that the consultants controlled or significantly influenced the

management or operating policies of its customer

Accordingly, on this separate ground, Kabani is not liable under 10(b) for Bodisen's

alleged failure to disclose that NYGG was a so called "related party."

## II.    Kabani Is Not Liable Under 10(b) For Bodisen's Alleged Misrepresentations About Its Internal Controls

Under the heading "Inadequate Internal Controls" (AC at p. 17), plaintiffs allege that

members of Bodisen senior management made representations as to the adequacy of its internal

controls and that those controls were deficient. The controls issue was tied to the alleged failure

to identify the NYGG and beneficial ownership issues. (AC 84).

Bodisen had fundamental and wide-spread deficiencies in internal controls [and] made repeated representations...that it had adequate internal controls and management, rendering it reliable and stable. Bodisen's 3Q:05 10-QSB, filed November 3, 2005, 2005 10-KSB, filed March 28, 2006, 1Q:06 10-QSB, filed May 9, 2006, 2005 10-KSB/A, filed August 12, 2006 and 1Q:06 10-QSB/A, filed August 2, 2006 and 2Q:06 10-QSB, filed August 14, 2006, each contained the same reassuring language that the Company's controls and procedures were effective as of the end of the period covered by this report.

(AC 32, 38) .

17

The subject disclosures alleged at AC 32, 38, made by the Bodisen CEO and CFO, appeared in the 2005 Form 10-KSB (Kabani Exhibit "1" at p. 58 of 69) and the 2005 10-KSB/A (Kabani Exhibit "2" at p. 70 of 74), in ITEM 8A of Part II, headed "CONTROLS AND PROCEDURES". ITEM 8A of Part II is not part of the audited financial statements, which appear separately in the Form 10-K filings.

The identical disclosures also appeared in the quarterly reports in Part I under Item 3, Controls and Procedures. Item 3 of Part I is part of the quarterly "Financial Information" section, containing the unaudited financial statements (3Q:05 10-QSB, Kabani Exhibit "5" at p. 11 of 14; 1Q:06 10-QSB, Kabani Exhibit "6" at p. 36 of 39 ; 1Q:06 10-QSB/A, Kabani Exhibit "7"at p.37 of 40; and 2Q:06 10-QSB, (Kabani Exhibit "8" at p. 39 of 43).

Kabani cannot be held liable for deficient disclosures by management (if these were such) about internal controls made in the unaudited portions of Bodisen's SEC filings. *Marsh,* 501 F. Supp.2d at 478; *Winstar ,* 2006 WL 473885 at *9.

Plaintiffs also allege GAAP violations by failure to "design or implement internal control systems to review and reconcile its shareholder ownership records with those of [Bodisen's] transfer agent to ensure that its SEC filings and public disclosures were accurate" (AC 129).

However, the requirement that auditors report on internal controls in Sarbanes-Oxley § 404(b), 15 U.S.C. § 7262 (2002), did not become applicable to non-accelerated filers like Bodisen until the end of fiscal year 2006. (68 FR 36636 (SEC Release No.33- 8328 (June 5, 2003), 2003 WL21294970 at *1). Thus, during the Class Period, Kabani's unqualified audit reports for 2003, 2004 and 2005, did not include the Bodisen reports on internal controls because

18

none was required.[7] *Merrill Lynch & Co., Inc. v. Allegheny Energy Inc.,* 229 FRD 441 & n10 (S.D.N.Y 2004).

Accordingly, even if the Company had made questionable statements concerning the adequacy of its internal controls, Kabani did not, and was not as a matter of law, responsible for those statements.

## III. Claims Against Kabani Based on the Amex Delisting Letters Should be Dismissed for Failure to State a Claim or, In the Alternative, Should Be Stricken under Rule 12(f)

The Complaint concedes that "regulatory filings and reports constitute significant matter on which the pleading is based." (AC 188). Indeed, the principal basis for the complaint allegations against Kabani that its audit opinions were deficient -- that Bodisen had "concealed" its relationship with Wei and NYGG (AC 19) and failed "to design or implement internal controls systems to review and reconcile its shareholders ownership records with those of its transfer agent" or to accurately report the beneficial ownership of its shares (AC 52, 129) -- is identified in the contents of the two Amex letters concerning the delisting of Bodisen's stock, the "Delisting Notice" dated November 6, 2006 and the Notice dated March 22, 2007 (AC 28, 29, 30 1, 2, 3, B, C, D, 32, 34, 93, 95, 101) (Kabani Exhibit "11")..

The Complaint alleges that the November 6, 2006 notice advised Bodisen of the Amex Staff's "belief" and "concern" that Bodisen had failed to comply with SEC and Amex listing requirements and that its stock would be delisted unless Bodisen set up a compliance plan (the "Plan") approved by Amex. The November 6, 2006 letter is quoted as stating that

> Amex believes that the Company made insufficient or inadequate disclosure in its public filings with regard to its relationship with, and payments to a consultancy firm and its affiliates [and] expressed concern that the Company has internal

---

[7] In contrast to §404, §906 certifications were required of senior company management as of the effective date of the Sarbanes-Oxley Act.

19

> control issues related to its accounting and financial reporting obligations. (*emphasis added*).

(AC 29, 34, 122). As evidenced by the March 22, 2007 notice, however, Bodisen was delisted on a procedural basis. In that document (AC 30), Amex advised Bodisen of its intent "to strike the common stock of Bodisen from the Exchange by filing a delisting application with the SEC" for failure to timely comply with a compliance plan *(emphasis added)* which required Bodisen to file its 2006 Form 10-K no later than April 17, 2007. (Kabani Ex. "11" at pp. 1-2). Instead, Bodisen filed a Form 8-K on March 20, 2007 (Kabani Ex. "14"), announcing that it would be unable to submit a timely filing. (Kabani Exhibit "11" at p. 4). Based on that purely procedural default, the Amex staff "concluded that it is appropriate to initiate immediate delisting proceedings." (Kabani Exhibit "11" at p. 4).

Amex did not have the power to delist Bodisen's stock, but rather had to file a delisting application with the SEC, which would become effective without a hearing unless Bodisen appealed. Thus, the March 22, 2007 letter informed Bodisen that the delisting would become final unless Bodisen appealed within ten days.[8] (Kabani Exhibit "11" at p. 6). Bodisen did not appeal the delisting. Absent such appeal, there was no administrative or judicial determination or review of the underlying facts as to, and thus no hearing or final adjudication to support the "belief" or "concerns" set forth in the November 6, 2006 letter or the matters discussed in the Notice of March 22, 2007.

The Amex letters of November 6, 2006 and March 22, 2007 do not provide a basis to state a claim under Rule 12(b)(6) and, for similar reasons, all allegations based upon the Amex letters should, in the alternative, be stricken under Rule 12(f). An administrative determination

---

[8] A detailed statutory appeal procedure included the Amex, the SEC and ultimately the Court of Appeals. (Amex Rules, Part 12 of the Amex Company Guide §1206(f); 15 U.S.C.A. § 78y).

20

that is not based on findings of fact resulting in a final adjudication cannot be used to support the allegations of a complaint. *In re Merrill Lynch & Co. Research Reports Securities Litigation*, 218 F.R.D 76, 78-79 (S.D.N.Y. 2003)("references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial"); *Lipsky v. Commonwealth United Corporations*, 551 F.2d 887, 893-94 (2d Cir.1976).

In *Lipsky,* the Second Circuit affirmed the granting of a motion to strike portions of a complaint that referred to securities fraud allegations made by the SEC against the defendant, which resulted in a consent judgment. 551 F.2d at 891-92. The court noted that "the consent decree entered into by the SEC and [the defendant] was the result of private bargaining, and there was no hearing or rulings or any form of decision on the merits by the district court." *Id.* at 894. Thus the court held that "neither a complaint nor references to a complaint which results in a consent judgment may properly be cited in "the complaint" and used to form the basis for the complaint allegations. *Id.* at 893-94.

Similarly, in *In re Merrill Lynch & Co. Research Reports Securities Litigation*, the court dismissed a complaint for failure to state a claim based on allegations that referred to or relied on SEC and NASD complaints that did not result in final adjudications or hearings. 218 F.R.D at 78-79. The court held that complaint allegations cannot be based on references to preliminary steps in administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact, and that paragraphs referring to such complaints "may not be repeated in any further amended pleading hereafter." 218 F.R.D at 78-79. *See also Ledford v. Rapid-American Corp.,* 1988 WL 3428, at *1-2 (S.D.N.Y.) (complaint allegations could not be

based on investigation and report by the New York State Division of Human Rights which was a non-adjudicative step in the administrative proceeding where there had been no findings of fact).

Here, neither of the Amex letters can be used to support the plaintiffs' allegations concerning the concealment of and failure to disclose Bodisen's relationship with NYGG, or the alleged inaccuracies in Bodisen's disclosures about its internal control and beneficial ownership problems.

Since the two Amex letters provide the only basis for the pleading of "fact" constituting the substantive charges of failures to comply with GAAS, the FIRST Claim must be dismissed.

## IV.    Broad Based Press Coverage of the Issues Alleged Operates to Require Dismissal of All Claims Against Kabani Because It Was Public Information

A further ground for 12(b)(6) dismissal of the claim against Kabani is presented by the broad based press coverage during the Class Period of the facts alleged in the Complaint concerning Bodisen's concealment of its relationship with NYGG. One of the principal charges of the claim against Kabani is that of failure to disclose the information found in the press coverage of Bodisen/NYGG/Wei discussed at length in the complaint (AC 58-72, 84). Although the Complaint refers at length to this press coverage to support its claims of underlying misconduct, the articles actually operate to require dismissal of those very claims because the articles disclosed to the public the so-called "concealed" adverse information. Plaintiffs cannot claim that their losses were caused by reliance on Bodisen's public filings because the market had already been informed of the Company's problems. Thus, the First Count fails to satisfy two of the essential elements of a 10(b) claim -- reliance and injury caused by that reliance--and should be dismissed. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S.* ___ (2008), 128 S.Ct. at, 769 (reliance is an essential element since it ensures that, for liability to arise, the

22

requisite causal connection between a defendant's misrepresentation and a plaintiff's injury" exists as a predicate for liability).

The law is clear that an investor may not reasonably rely on a misrepresentation if the disclosed fact is already in the public domain. *In re Yukos Oil Co. Securities Litigation*, 2006 WL 3026024 at * 22 (S.D.N.Y.) (under the "truth on the market theory", "a misrepresentation is immaterial if the information is already known to the market because the *misrepresentation* cannot then defraud the market").

Here, the facts alleged in the Complaint concerning Bodisen's allegedly concealed relationship with Benjamin Wei and NYGG were discussed at length in the press prior to the commencement of the Class Period in a series of newspaper articles. Thus, a May 1, 2006 article in the. *New York Post* (Gordon Exhibit. "A" ) (AC 21) detailed (i) Bodisen's "murky relationship" with NYGG and the shady details of Benjamin Wei's troubled disciplinary history with the NASD (AC 24) and the misconduct attributed to him; (ii) raised questions about the "doubtful value of the merchandise" Wei was promoting on Bodisen's behalf and warned investors to "think twice" about investing in a company in which "the assets may amount to nothing but a mountain of cow pies somewhere in China...." (Gordon Ex "A" at p. 2.)

Similar information concerning Bodisen's relationship with Wei was discussed in a September 29, 2006 article in Market Watch,[9] (Gordon Exhibit "B" )(AC 22) as well as in an October 9, 2006 article in the *New York Post*. (Gordon Ex. "C")(AC 24). The October 9, 2005 article (AC 24) reported that "several Bodisen SEC filings had named NYGG "in a $300,000 contract to sell unregistered Bodisen stock to investors in London early this year", and disclosed that NYGG earned commissions on the sale of nearly $15 million worth of stock in Bodisen. In a section of the article not included in the complaint, readers were informed that the Amex had

---

[9]    Plaintiffs incorrectly cite the source for this article as the *New York Post.* (AC 22)

recently "launched a campaign to rid the exchange of its century-long reputation as a financial landfill where Wall Street dumps its trash," and had recently delisted a company with a "wacko business plan" thereby suggesting " what could await Amex investors in obscure foreign stocks like Bodisen where due diligence is all but impossible."[10]   (Gordon Exhibit "C" at 1).

Moreover, Bodisen's relationship with NYGG was not only disclosed in newspaper articles but in Bodisen's SEC filings and press releases during the Class Period. Thus, Bodisen's Form SB-2/A, filed with the SEC on February 1, 2006, Part VI "Additional Information" ¶8 "Material Contracts" (Kabani Exhibit "12" at p. 110 of 127 ) disclosed that NYGG

> has an oral agreement with a PRC consultancy firm, Tianjin NYGG Investing Consulting Co. ltd. for the provision of services to assist on global brand recognition, fund raising and stock liquidity. The agreement provides for a fixed fee payable quarterly and a success fee on Admission.

Bodisen's Form SB-2/A, filed with the SEC on February 2, 2006, Part VI "Additional Information " ¶8 "Material Contracts" (Kabani Exhibit "13" at p. 128 of 146) disclosed that the Company

> has an oral agreement with the Beijing office in [sic] New York Global Capital, Inc. for the payment by the Group of a corporate finance fee of $300,000.

The February 7, 2006 Form 424B1 prospectus, Part VI "Additional Information" ¶8 "Material Contracts" (Kabani Exhibit "3" at p.129 of 142) disclosed, that NYGG was retained to provide

> services to assist in improved global brand recognition, fund raising and stock liquidity. The agreement (with NYGG) provides for a fixed fee payable quarterly and a success fee on Admission.

---

[10] The Complaint specifically relies on the Fraud on the Market Doctrine (AC 99. 79-80) and alleges that the market for Bodisen stock had "digested current information regarding Bodisen from all publicity available sources and reflected such information in Bodisen stock price" (AC 180). That information thus included the potential delisting of Bodisen.

Ex. "3" at 129 of 142). In addition, Bodisen's February 6, 2006 (AC 59) and March 20, 2006 (AC 45) press releases disclosed that NYGG had been an advisor in Bodisen's dual listing and private placement." (Kabani Exhibits "9" and "10").

The detailed press coverage confirms that the so-called adverse facts complained of were not concealed, but instead were broadly disclosed including even the potential that Bodisen might be delisted. Plaintiffs' "fraud on the market" theory (AC ¶¶179-80) thus fails because there was no fraud on the market. To the contrary, under the "truth on the market", theory, the information in the public domain operated to "neutralize a misstatement or omission", *Yukos,* at * 22, thus "sever[ing] the link between the alleged misrepresentation and ... the price received (or paid) by the plaintiff," because in that case "the basis for finding that the fraud had been transmitted through market price would be gone." *Basic Inc. v. Levinson,* 485 U.S. 224, 248 (1988).

Accordingly, the broad press coverage provides a basis for dismissal of plaintiffs' securities fraud claim against Kabani.

**CONCLUSION**

The motion should be granted in all respects, with costs.

Dated: New York, New York
      February 11, 2008

Respectfully submitted,

JONES HIRSCH CONNORS, & BULL, P.C.

By: _____
     Alan M. Gelb (AG 4254)

Of Counsel:

Alan M. Gelb (AG 4254)
Rita W. Gordon (RG 4077)