UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHANIE TABOR, Individually And on
Behalf of All Others Similarly Situated

        Plaintiff,

vs.

BODISEN BIOTECH, INC., BO CHEN,
WANG CHUNSHENG, KAREN QIONG
WANG, YILIAN LAI, and KABANI & CO.,
INC.

        Defendants.

CIVIL ACTION NO. 06-CV-13220 (VM)

# REPLY MEMORANDUM OF DEFENDANT KABANI & COMPANY, INC.

**JONES HIRSCH CONNORS & BULL P.C.**
Attorneys for Defendant
Kabani & Company, Inc.
One Battery Park Plaza
New York, New York 10004
(212) 527-1000

**Of Counsel**
Alan M. Gelb (AG 4254)
Rita W. Gordon (RG 4077)

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| I. | ARGUMENT | 1 |
| | A. Plaintiffs Failure to Show Misstatements of the Bodisen Financial Condition | 1 |
| | B. The Absent Related Party | 2 |
| | C. The Absence of Audited Misstatements Excludes Any Duty to Correct. | 3 |
| | D. Broad Based Press Coverage of the Issues Alleged Was Not Corrected by Bodisen's Subsequent Disclosures | 7 |
| | E. Claims Against Kabani Based on the Amex Delisting Letters Should Be Dismissed For Failure to State a Claim or In the Alternative Should Be Stricken | 9 |
| II. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**CASES** <span style="float:right">**page**</span>

American Insured Mortg. Investors v. CRI, Inc., 1990 WL 192561 (S.D.N.Y.)..........................7

Central Bank of Denver v. First Interstate Bank of Denver,
511 U.S. 164, 177 (1994) .....................................................................................................4

In re AOL Time Warner, Inc. Securities and "Erisa" Litigation,
381 F. Supp. 2d 192 (S.D.N.Y. 2004) ..................................................................................6

In re Global Crossing Ltd. Sec. Litig., 322 F.Supp.2d 319 (S.D.N.Y. 2004)..............................4,5

In re Lernout & Hauspie Sec. Litig., 230 F. Supp.2d 152 (D. Mass. 2002)................................4,5

In re Ramp Corp Securities Litigation, 2006 WL 2037913 (S.D.N.Y.)........................................6

In re Yukos Oil Co. Securities Litigation, 2006 WL 3026024 (S.D.N.Y)..................................7,9

Lipsky v. Commonwealth United Corp., 551 F. 2d 887 (2d Cir. 1976).......................................10

Overton v. Todman, 478 F.3d 479 (2d Cir. 2007).......................................................................3,4

SEC v. Gold, 2006 WL 3462103 (E.D.N.Y.)..................................................................................6

Tellabs, Inc. v. Makor Issues and Rights, Ltd., 127 S. Ct. 2499 (2007) ......................................5,6

The Limited, Inc. v. McCrory Corp., 683 F. Supp. 387 (S.D.N.Y. 1988).......................................5

Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1979) .................................................1

Zucker v. Sasaki, 963 F. Supp. 301 (S.D.N.Y. 1997)..................................................................... 4

## **STATUTES**

SEC Regulation S-X (17 CFR Part 210) §210.5.02 ¶¶30, 31 ......................................................... 1

SEC Regulation S-K (17 CFR Part 229) §229.10(a) .................................................................. 2

SEC Regulation S-X (17 CFR Part 210) §210.1-01(a) ............................................................... 2

SEC Regulation SK (17 CFR 229) §229-308T ........................................................................... 2

Sarbanes Oxley Act, 15 US (CF 7262) ....................................................................................... 2

SEC Regulation S-X (17 CFR Part 210) §210.1-02(u) ............................................................... 3

15 U.S.C. 78u-4(b)(2) ................................................................................................................. 5


## **RULES**

AU Section 550.04 ...................................................................................................................... 1

AU Section 9550.17 .................................................................................................................... 1

FASB 57 ...................................................................................................................................... 2

FCSB 129 .................................................................................................................................... 2

# ARGUMENT

## A. Plaintiffs' Failure to Show Misstatements of the Bodisen Financial Condition

Kabani's Main Brief demonstrated the failure of the Amended Complaint to allege any material misstatement of the Bodisen financial condition in its audited financial statements. Absent such misrepresentation, an "auditor's responsibility" with respect to "other information" (*i.e.*, information outside the audited financial statements) "does not extend beyond the financial information identified in his report..." AU Section 550.04, "Other Information in Documents Containing Audited Financial Statements"; *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1979).[1]

Plaintiffs' Answering Brief Point II, pp. 5-11 responds with three specific claims: (i) "the Company's financial statement failed to recognize or acknowledge Bodisen's internal control problems and issues concerning beneficial ownership of the company"; (ii) "the concealment of related party relationships"; and (iii) failure to correct these alleged errors. (*Id.* at 6)

Issue (i) is detailed as a failure to reconcile stock ownership records with those of Bodisen's transfer agent which, "<u>may have</u> inaccurately reported the Company's capitalization" (*Id.*)(*emphasis added*).[2] Plaintiffs identify the requirement for disclosure of (a) shares authorized, issued and outstanding; (b) par value or stated value, and (c) the number of shares reserved for future issuance etc. (*Id.*). They omit to explain, however, that the audited financial statements set forth this information. See Kabani Ex. 1, Stockholders Equity, p. 25 of 69. Those disclosures were the subject of SEC Regulation S-X (17 CFR Part 210) §210.5.02 ¶¶30, 31; (see also FASB 129 ¶¶4,5).

---

[1] Moreover, AU Section 9550,"Other Information in Documents Containing Audited Financial Statements: Auditing Interpretations of Section 550", ¶¶ 16 & 17, provides that "auditors are not required [] to read information contained in electronic sites [such as press releases] or to consider the consistency of [such] information ...with the original [audited] documents."

[2] The materiality, if any, of that speculative assertion to support a claim of securities fraud does not appear in plaintiff's papers though it is required by the PSLRA. *Overton v. Todman*, 478 F.3d 479, 487.(2d Cir. 2007).

1

Regulation S-X (17 CFR Part 210) §210.1-01(a) "sets forth the form and content of and requirement for financial statements required to be filed..." and thus includes coverages for which auditors are responsible.

Plaintiffs are in error, however, when they go on to state that "issues concerning beneficial ownership of the company" including "disclosure of the identity of investors owning a large percentage of stock" (Ans. Br. p.6) were Kabani responsibilities. The source of plaintiffs' error is their failure to identify the Regulation which covers management disclosures. SEC Regulation S-K, (17 CFR Part 229) §229.10 (a), "states the requirements applicable to the content of the non-financial statement portions of..." registration statements, annual reports and the like – i.e. management disclosures (*emphasis added*).

Section 229.403 is headed <u>Security ownership of certain beneficial owners and management</u>. It imposes on <u>management</u>, in its non-financial statement disclosures, the obligation to deal with beneficial ownership issues. Kabani's moving papers showed that, in fact, non-financial disclosures by Bodisen had dealt with these issues as the governing S-K section required. (Kabani Aff. Ex. "1" at p. 64 of 69; Ex. "2" at 70 of 74; Ex. "3" at 121 of 142; Ex. "4" at p. 38 of 108). When plaintiffs' brief describes these matters as audit-based disclosures for which Kabani was responsible (*see, e.g.*, Ans. Br. p.6), they simply fail to identify or apply the rules which govern these disclosures and exclude Kabani from non-audit-based liabilities.[3]

---

[3] Plaintiffs argue that Kabani ignored red flags concerning Bodisen's internal controls (Ans. Br. at 2) but concede that the requirement that auditors report on internal controls in Sarbanes-Oxley §404(b) did not become applicable to non-accelerated filers like Bodisen until the end of fiscal year 2006. (*Id.* at 14 n.8). They claim that GAAP required such disclosure by the auditor. (*Id*). However, Regulation S-K (17 CFR 229) §229.308T, headed Internal control over financial reporting, required management not auditors to report on internal controls.

## B. The Absent Related Party

Plaintiffs expound at length (Ans. Br. at 10 & n.4) on the extent of required disclosures in respect to related party transactions, but do so without facts to show that any related party was involved. The basis of the issues they seek to raise is that there was a <u>business relationship</u> between Bodisen and its outside consultancy or public relations firm NYGG, and Benjamin Wei, its principal (Ans. Br. p.10).

But the audit rules do not base related party disclosure requirements on mere business relationships. They are governed by the definition of "related parties" in SEC Reg. S-X (17 CFR Part 210) §210.1-02(u) and FASB 57 discussed in Kabani's opening brief pp.16-17. No facts show that the consultant was a "related party" within the terms of this definition,[4] a factor which moots the extended discussion of disclosure which is operative only when such a party has been shown to exist.

## C. The Absence of Audited Misstatements Excludes Any Duty to Correct

Plaintiffs lean heavily on *Overton v. Todman*, 478 F.3d 479 (2d Cir 2007), as "a case directly on point" (Ans. Br. p. 1). *Overton* held, on facts wholly foreign to those involved here, that a pleading of primary securities fraud against auditors could be sustained based on a "certified opinion that is false or misleading when issued", where the auditor learned of the falsity and takes no reasonable steps to withdraw or correct its opinion and/or the underlying financial statements. *Overton* held such a pleading could be sustained "assuming all the other elements of a securities fraud claim are present."[5] *Id.* at 480-81. Here, no such facts or elements are before the court in the pleading against Kabani. A principal distinguishing factor is that Todman, the auditor, had "made significant errors that concealed" its customer's "largest liability" which was for payroll taxes. The

---

[4] In a conclusory AC ¶154 plaintiffs alleged that the consultant had influence over Bodisen, but the only fact alleged about NYGG activities showed that Bodisen relied upon it " for purposes of public relations and the promotion of the company's securities in the U.S. market..." (AC ¶19).

[5] These are identified as "materiality, transaction causation, loss causation and damages" in fn 1. *Overton*, 478 F.3d at 487.

3

audited financial statements erroneously reflected a zero liability for these obligations in 1999, errors perpetuated in the 2000 audited financial statements, and not uncovered in audits of 2001 or 2002 (*id.* at 481).

Despite discoveries of these events and undisclosed liabilities, the auditor took no steps to withdraw the certification nor did they instruct the company not to disclose the erroneous financial statements. *Id.* at 482.

The foundational element to the *Overton* analysis is the existence of a false or misleading statement when made, in the opinion or financial statements. None has been sufficiently alleged here. *Overton* emphasizes that the duty to correct arises out of the accountant having made a false statement in its financial report on which investors may have relied, citing *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 177 (1994) – "to be liable under §10(b)... an actor must himself make a...material misstatement..." *Overton*, 478 F.3d at 484 (*emphasis added*). Here, the disclosures challenged by plaintiffs were made by management under its SEC directed responsibilities. Kabani made no misstatement in the Bodisen financials, and thus bore no duty to correct.

Plaintiffs conclude this section by citing *In re Global Crossing Ltd. Sec. Litig.*, 322 F. Supp. 2d 319 (S.D. N.Y. 2004) and *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152 (D. Mass. 2002) for the wholly erroneous proposition that Kabani may be subjected to primary securities fraud liability based on the inference "that investors relied upon Kabani's assessments in all portions of the 10-K's as well as in the [Bodisen] press releases because it was listed as Bodisen's accountant, held itself out as auditor, and never denied or sought to limit publicly the extent of its involvement with Bodisen." (*emphasis added*) (Ans. Br. 11).

It is, however, well settled that a 10(b) fraud claim cannot be premised solely on an auditor's "status as an auditor". *Zucker v. Sasaki*, 963 F. Supp. 301, 309 (S.D.N.Y.1997) (dismissing securities fraud claim where scienter allegations were premised "solely on [the defendant's] status as an auditor"); *The Limited, Inc. v. McCrory Corp.*, 683 F.Supp. 387, 394 (S.D.N.Y.1988) ("Touche was not an insider [] and its knowledge cannot be inferred solely from the fact that it was Lerner's auditor").

This recklessly excessive assertion bears no relation to the cases cited. In *Global Crossing*,[6] the auditor prepared or "materially assisted in preparing false statements issued by [the company]" (322 F. Supp. 2d. at 334-5) and <u>created</u> accounting schemes used to falsify the company's financials. (*Id.* at 335). In *Lernout*, the auditor "drafted" portions of the misleading financial disclosures later filed with the SEC and made oral misrepresentations to investors. *Id.* at 166-67. No such facts are presented here.

Plaintiffs cite no case in which an allegation of <u>scienter</u> against an auditor was sustained in the absence of material misstatements in audited financial statements or participation in a scheme to defraud. Plaintiffs cite *Tellabs, Inc. v. Makor Issues and Rights, Ltd.* 127 S. Ct. 2499 (2007) in which the court noted that the PSLRA required facts to support a "strong inference" of the required state of mind, 15 U.S.C. 78u–4(b)(2), described as a "cogent and compelling" inference. *Id.* at 2502-3, 2505. The Court applied these rules to allegations by shareholders of a company which falsely reassured public investors that demand for its principal product was strong, and earning record revenues, when in fact demand was declining, the product was not ready for delivery and demand was weak. The

---

[6] Plaintiffs point to a trip to China (citing ¶138) and "the AMEX" notices (citing AC ¶29-30) as the bases on which it should have changed its audit opinion (Ans. Br. at 13). Nothing in AC ¶138 deals with internal controls, stock ownership or related party transactions. The reference to the AMEX letter dealt only with <u>management</u> disclosures not the audited financial statements. Nowhere is AMEX alleged to have criticized the audited financial statements or the Kabani audit opinions.

5

company overstated sales projections and "hyped" sales figures by flooding customers with unwanted product in time to be included among reported sales. (*Id.* at 2505).

Under the *Tellabs* principles, as applied to auditors, a 10(b) claim must allege that "the audit amounted to no audit at all, [there was] an egregious refusal to see the obvious...or... the accounting judgments which were made were such that no reasonable accountant would have made the same decision if confronted with the same facts". *SEC v. Gold*, 2006 WL 3462103 *4 (E.D.N.Y). As *Gold* explained in this setting, conscious disregard of "red flags" may amount to an actual intent to aid in the fraud by the audited company. *Id.* In *Gold,* relied upon by plaintiffs (p.12), the auditor found and disregarded corporate misconduct during the performance of its audit procedures – i.e. sales at prices below inventory cost, figures indicating a false profit in place of a loss with no further audit inquiry, etc. *Id.* at *5. No such facts are present here.

*In re AOL Time Warner, Inc. Securities and "Erisa" Litigation*, 381 F. Supp. 2d 192 (S.D.N.Y. 2004) found improper conduct disclosed by audit procedures including manipulation of revenues to achieve pre-set targets; major transactions repeatedly occurring at end of reporting quarters to support projections, all supported the 10(b) claim, *id.* at 240, including scienter as being sufficiently attention grabbing to have alerted a reasonable auditor of the audited company's shenanigans.

So called "red flags" are referenced by plaintiffs here as signs of absent management integrity on which shareholders could rely (Ans. Br. at 4, 13-15). But Kabani did not opine on the subject of management integrity, and provided assurances only of compliance with audit standards of the Bodisen financial statements. *In re Ramp Corp Securities Litigation,* 2006 WL 2037913 (S.D.N.Y.). at *9, 11. Reliance by shareholders must be reasonable, and may extend only to statements and

## D. Broad Based Press Coverage of the Issues Alleged Was Not Corrected By Bodisen's Subsequent Disclosures

Kabani showed in its moving brief that broad based press coverage during the Class Period in a series of 2006 news articles dated May 1, September 29 and October 9 of the facts alleged in the Complaint about the so-called "concealed" relationship between Bodisen and its NYGG consultancy firm, and the unsavory background of its principal, were in the public domain and "neutralized" the alleged misrepresentations and omissions. *In re Yukos Oil Co. Securities Litigation*, 2006 WL 3026024 (S.D.N.Y.) at *22.

Plaintiffs attempt to refute Kabani's "truth on the market" demonstration, arguing that the news articles "were *quickly* countered" by the Company's issuance of press releases on May 3 and October 18, 2006[7] (Ans. Br. at 21)(*emphasis added*).

Plaintiffs are mistaken. The law is clear that in order to "counter" a misrepresentation, a disclosure must be "corrective", *i.e.*, must provide the investor with facts demonstrating that the prior news was inaccurate. *American Insured Mortg. Investors v. CRI, Inc.*, 1990 WL 192561 (S.D.N.Y.) at * 8-9 (*emphasis added*). However, the May 3 and October 18 press releases did not even mention the news articles, much less provide facts demonstrating that the adverse news was false.

The facts alleged in the Complaint concerning Bodisen's allegedly "murky" relationship with Wei (AC 19-26) were disclosed, and were thus in the public domain, as early as the May 1, 2006 article in the *New York Post* entitled "Stir Fried Stocks –New York Firm Is Touting Murky China

---

[7] Although the Complaint referred to the May 3 and October 18, 2006 Forms 8-K as evidence of Bodisen's allegedly misleading press releases (AC 76, 91), plaintiffs' assertion that these releases expressly "countered" the news articles by showing that the news was false is first made in the answering brief at 21. Copies of these 8-Ks are therefore attached to the Reply Affidavit of Rita W. Gordon ("Gordon Reply"), submitted herewith as Exhibits "1" and "2".

7

Investments" (Gordon Exhibit "A"). The article detailed the unsavory background and disciplinary history of NYGG principal Benjamin Wei, the promoter of Bodisen, and his "ongoing struggle...to keep both himself and the regulatory skeletons in his closet hidden from view." The article revealed that despite the "doubtful value" of Bodisen's merchandise, Wei touted to hedge fund managers and potential investors at a February 2006 microcap conference "the growth opportunities awaiting Bodisen Biotech in the Chinese organic fertilizer business." Warning investors to think twice about a company whose "assets may amount to nothing but a mountain of cow pies somewhere in China," the article mentioned the "reported resignation" of Bodisen's CEO.

The May 3, 2006 press release, filed as an exhibit to Bodisen's May 3, 2006 Form 8-K, (Gordon Reply Ex. "1"), was entitled "Bodisen Biotech Inc. Issues Statement Regarding Recent Events", (Ans. Br. at 21, AC 76). The release made no mention whatsoever of the May 1 article in the *Post*. It rather referred to the unauthorized posting by an employee on Bodisen's website of news that the CEO was seriously ill and was resigning and explained that the CEO had returned to duty. The release did not refer to the adverse disclosures about Wei and NYGG and their relationship to Bodisen or refute the article's questioning of the value of Bodisen's merchandise or its warning to investors of the risks involved in buying the stock.

Like the May 1, 2006 article, the September 29, 2006 (Gordon Ex. "B" at 2) and October 9, 2006 (Gordon Ex. "C" at 1) articles revealed adverse news about Bodisen and Wei. In addition, the September 29th article reported that Timothy Halter, of Halter Financial, "claims to have turned down the Bodisen reverse merger and that Halter had stated that he was told by his auditor that Bodisen was 'unauditable'". The October 9, 2006 article disclosed the possibility that Bodisen stock would be delisted by the Amex.    The October 18, 2006 press release (Gordon Reply Ex. "2"),

8

however, failed to counter these disclosures as claimed (Ans. Br. at 21), omitting to address a possible delisting or any comment about Bodisen's "unauditability".

Plaintiffs concede the fact of Bodisen's public disclosures about its consultancy relationship with Wei and NYGG in its SEC filings and that the murky relationship with Wei and NYGG was the further subject of significant press coverage as well. (Ans. Br. at pp. 21-22). Thus plaintiffs cannot claim that the Company's disclosures "neutralized" the broad based adverse press coverage of Bodisen and its NYGG relationship. *In re Yukos Oil Co. Securities Litigation*, 2006 WL 3026024 (S.D.N.Y.) at *22.

It is worth noting that the Bodisen stock price declined by over 50% from a high of $22 per share at the end of January, 2006 (AC 51) to $10 per share before the November 12, 2006 announcement of the Amex delisting letter, followed by an additional decline of 40% in the stock price to $6 per share after the delisting announcement (AC 17).

### E. Claims Against Kabani Based On The Amex Delisting Letters Should Be Dismissed For Failure To State A Claim Or In The Alternative Should Be Stricken

Plaintiffs do not refute Kabani's demonstration that the Amex letters did not announce the results of final adjudications, and therefore cannot form the basis of Complaint allegations. Rather they contend, without a single citation, that Bodisen's failure to appeal the delisting of the stock constitutes an acceptance of "the findings of Amex". (Ans. Br. at 19).

As detailed in Kabani's moving brief at pp. 19-20, the Complaint alleges that the November 6, 2006 Amex letter was based on Staff "belief" and "concern", not on findings at all, much less final ones (AC 29, 34, 122). The notice of delisting of Bodisen stock dated March 22, 2007 was not based on "findings" by Amex of misconduct now cited by the Complaint, but was rather a procedural response to Bodisen's failure to comply with its agreement to file its 2006 10-K by March 20, 2007. (Kabani Ex. "11" at 4). Thus, plaintiffs' argument to the contrary, absent an appeal, there were no

9

fact findings in the first instance nor any administrative or judicial determination or review, and thus no hearing or final adjudication to support any Amex Staff "belief" and "concern".

Equally unavailing is plaintiffs' argument that Bodisen "accepted the findings of AMEX" as evidenced by the Company's delisting announcement. (Ans. Br. at 19). Bodisen was required by the Amex to issue a press release concerning its receipt of the March 22, 2007 Amex delisting notice. (Kabani Aff. Ex. "11" at 4-5). When Bodisen announced in its March 28, 2007 Form 8-K that it would not appeal and that its stock would be delisted (Ans. Br. at 17, 19), the underlying facts that the Complaint relies on were not at issue. Amex Staff "belief" and "concern" were all there ever were. Thus, Bodisen did not accept any findings of "facts" but only the order of delisting.

Plaintiffs argue that motions to strike are disfavored. (Ans. Br. at 16). However, where as here, the facts alleged in the Complaint are based on no more than the "belief" and "concern" of the Amex Staff, courts have granted motions to strike complaint allegations, as this Court should do here. *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893-94 (2d Cir.1976).

## CONCLUSION

The motion should be granted in all respects, with costs.

Dated: New York, New York
April 18, 2008

Respectfully submitted,

JONES HIRSCH CONNORS, & BULL, P.C.

By: _____
Alan M. Gelb (AG 4254)

Of Counsel:
Alan M. Gelb (AG 4254)
Rita W. Gordon (RG 4077)

10