UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
STEPHANIE TABOR, Individually    :
and on Behalf of All Others      :
Similarly Situated               :
                                 :
                    Plaintiffs,  :     06 Civ. 13220 (VM)
                                 :
        - against -              :     **DECISION AND ORDER**
                                 :
BODISEN BIOTECH, INC., BO CHEN,  :
WANG CHUNSHENG, KAREN QUIONG     :
WANG, YILIANG LAI, and           :
KABANI & CO., INC.,              :
                                 :
                    Defendants.  :
-------------------------------X

**VICTOR MARRERO, United States District Judge.**

Plaintiffs brought this action on behalf of a potential class of purchasers of the common stock of Bodisen Biotech, Inc. ("Bodisen") between November 3, 2005 and November 10, 2006 (the "Class Period") against defendants Bodisen, Bo Chen ("Chen"), Karen Quiong Wang ("Wang"), Wang Chunsheng ("Chunsheng"), Yiliang Lai ("Lai") (collectively, the "Individual Defendants" and, with Bodisen, "Bodisen Defendants"), and Kabani & Co., Inc. ("Kabani") (collectively, "Defendants"). Plaintiffs allege various violations of Sections 10(b) ("§ 10(b)") and 20(a) ("§ 20(a)") of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. (the "Exchange Act") and the Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 ("Rule 10b-5").

Defendants moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), Rule 9(b) ("Rule 9(b)"), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737, asserting that the complaint fails to state a claim upon which relief may be granted and to plead fraud with sufficient particularity. In the alternative, Defendants move to strike certain allegations pursuant to Federal Rule of Civil Procedure 12(f) ("Rule 12(f)").

## I. BACKGROUND

In ruling on Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the following facts, which are derived from the allegations contained in Plaintiffs' Consolidated Amended Class Action Complaint, dated November 16, 2007 (the "Complaint") and the documents cited or relied upon for the facts pled therein. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

A. THE PARTIES

1. Plaintiffs

Plaintiffs assert that they bring this action "on behalf of purchasers of the common stock of Bodisen, between November 2, 2005 and November 10, 2006." (Compl. ¶ 1).

2. Defendants

Bodisen is a Delaware corporation with its principal

2

place of business in Xi'an, China. Bodisen purportedly engages in the development, manufacture, and sale of pesticides and compound organic fertilizers in China, and manufactures sixty products in four product categories: (1) organic compound fertilizer; (2) organic liquid fertilizers; (3) pesticides and insecticides; and (4) agricultural raw materials.

The Individual Defendants were all officers of Bodisen during the Class Period. Wang was the Chairman and Chief Executive Officer ("CEO"). Chen was a founder of Bodisen and served as President and Executive Director. Chunsheng was the Chief Operating Officer ("COO"). Lai was the Chief Financial Officer ("CFO") and Principal Accounting Officer.

Kabani is a firm of certified public accountants, auditors, and consultants based in Los Angeles, California. Kabani served as Bodisen's auditor and principal accounting firm from February 26, 2004 through July 30, 2007.

B.   <u>FACTUAL ALLEGATIONS</u>

Plaintiffs claim that Defendants made materially false and misleading statements that caused Bodisen's stock to trade at artificially-inflated stock prices during the Class Period. Plaintiffs allege that Defendants made false and misleading statements regarding: (1) the beneficial ownership of Bodisen stock and its capitalization; (2) Bodisen's internal controls;

3

(3) the relationship between Bodisen and New York Global Group, Inc. ("NYGG"); (4) Bodisen's compliance with the Generally Accepted Accounting Principles ("GAAP"); and (5) Bodisen's descriptions of its products, proprietary technology, and biotech nature.  Plaintiffs' claims involve alleged misstatements and omissions from Defendants' press releases and filings with the SEC.

    1.  <u>Bodisen Defendants' Alleged Misrepresentations</u>

      On November 3, 2005, Defendants filed with the SEC Bodisen's 3Q:05 Form 10-QSB (the "3Q:05 Form") for the quarter ending on September 30, 2005, which was signed and certified by Wang and Lai, and also issued a press release (the "November 2005 Press Release").  The 3Q:05 Form reported Bodisen's earnings, and stated that Bodisen's financial results were prepared in accordance with Generally Accepted Accounting Principles ("GAAP") and SEC accounting rules.  The 3Q:05 Form also contained representations that the CEO and CFO had conducted an evaluation of the effectiveness of the design and operation of Bodisen's disclosure controls and procedures, and had concluded that the disclosure controls and procedures were effective for the time period covered by that report.  In the 3Q:05 Form, Wang and Lai certified that the report contained no untrue statements of material fact nor omitted any material facts without which a statement made would be

misleading, and also certified that the financial reports were accurate and complete. Wang and Lai further certified that Bodisen had sufficient internal control over financial reporting to provide reasonable assurance as to the reliability of financial reports, and had disclosed all significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting. Wang and Lai also signed a separate certification asserting that, pursuant to Section 906 of the Sarbanes-Oxley Act, the 3Q:05 Form complied with Section 13(a) or 15(d) of the Exchange Act and that the report fairly presented the financial condition and results of Bodisen.

Substantially similar certifications were signed by Wang and Lai on or about March 28, 2006, May 9, 2006, and August 14, 2006 in connection with Bodisen's 2005 Form 10-SKB, 1Q:06 Form 10-QSB and 2Q:06 Form 10-QSB, respectively. Furthermore, each of these submissions stated that "the Chief Executive Officer and Chief Financial Officer concluded that [Bodisen's] disclosure controls and procedures were effective as of the end of the period covered by this report" and that there "were no changes in internal control over financial reporting ... that have materially affected, or are likely to materially affect, [Bodisen's] internal control over financial reporting." (Id. ¶ 32.)

5

Plaintiffs contend that Bodisen's repeated representations in SEC filings, releases, and certifications that it had adequate internal controls and management were not true, and allege that, in actually, Bodisen had fundamental and widespread deficiencies in internal controls. Plaintiffs also claim that Bodisen's statements that it was in compliance with GAAP and SEC rules were false because Defendants (1) failed to disclose material related party transactions in Bodisen's financial statements; (2) had inadequate internal controls and failed to comply with GAAP; and (3) inaccurately reported beneficial ownership of Bodisen's stock.

Additionally, in the November 3, 2005 Press Release, Wang stated that Bodisen's products "target" the Chinese farmers who "increasingly prefer friendly organic fertilizers over chemical fertilizers," and that "[m]any Chinese only use foods and vegetables grown with organic fertilizers." (Id. ¶ 25.) Plaintiffs allege that this statement was false, because Bodisen's products are not organic as defined by United States and European standards.

On December 5, 2005, Defendants published a press release in which Wang was quoted as highlighting Bodisen's "tremendous growth opportunities" because of its "proprietary agricultural technology" and low market share. (Id. ¶ 45.) Wang also commented that Bodisen's management team was "focused on

earnings growth, market share growth, and corporate governance." (Id.) Plaintiffs allege that these statements were false and misleading because Defendants did not have any patents or pending patents. Plaintiffs also allege that the management team was not "focused on earnings growth, market share growth, and corporate governance," because of deficient internal controls and failure to comply with GAAP.

On January 24, 2006, Defendants published a press release in which Wang stated that "Bodisen is on track to achieve record earnings growth in 2006." (Id. ¶ 48.) Plaintiffs claim that this statement was false or was recklessly disregarded as such because Bodisen's earnings could not be accurately reported as Defendants did not accurately report its market capitalization and its earnings growth was tainted by GAAP violations and material internal control deficiencies.

On February 6, 2006, Bodisen issued a press release announcing its listing on the AIM Market[1] and stated that Bodisen sold 1,643,836 shares in the new offering, and represented that after this transaction, 17,764,836 shares were outstanding. Plaintiffs allege that this statement was false or recklessly disregarded as such because Bodisen did not know and could not accurately represent the beneficial

---

[1] Formerly known as the Alternative Investment Market of the London Stock Exchange.

ownership of large percentages of its outstanding shares, either before or after the transaction.  The announcement also stated that Bodisen was the largest China-based company on the AIM.  Plaintiffs contend that this statement was false or recklessly disregarded as such because Defendants did not know Bodisen's market capitalization or the beneficial ownership of large percentages of Bodisen's shares, and the total number of outstanding shares was not accurately known because of internal control issues.  Wang was quoted as noting the "strong institutional demand" for the AIM offering.  (Id. ¶ 53.)  Wang also touted Bodisen's "natural fertilizer" as compared to tradition "chemical fertilizers."  (Id.)  Plaintiffs allege that the statements were false or recklessly disregarded as such because the strong demand was not the result of legitimate interest in Bodisen, but rather, was driven by Bodisen's below-market pricing in the AIM offering that effectively transferred wealth to Defendants' preferred investors and Bodisen's products were not organic nor made from biomass (e.g., manure).

On February 7, 2006, Defendants filed with the SEC a Registration Statement and Prospectus (the "February 2006 Registration Statement") in connection with the AIM offering, which was signed by Wang and Chen.  The February 2006 Registration Statement purported to list the number of shares

owned and the percent of issued share capital for management and Directors. Plaintiffs claim that those statements were materially false and misleading because Defendants could not identify all beneficial owners of more than 10 percent of the stock as required by the SEC and GAAP rules.

On March 20, 2006, Defendants issued a press release in which Wang stated that Bodisen "is the largest organic fertilizer company in China." (Id. ¶ 59.) Plaintiffs allege that this statement was materially false, because Bodisen's products were not organic nor manure-based, but rather, were natural fertilizers produced using Bodisen's proprietary technology.

On March 28, 2008, Bodisen issued a press release announcing results for the fourth quarter and year ending December 31, 2005 and in which Wang noted again that Bodisen produced "organic fertilizer solutions." (Id. ¶ 62.) Plaintiffs claim that this statement was materially false and misleading because Bodisen's products were not organic.

On or about March 28, 2008, Bodisen filed with the SEC its 2005 Form 10-KSB (the "2005 Form 10-KSB") for the year ended December 31, 2005, which was signed by Wang, Lai, and Chen and certified by Wang and Lai. Plaintiffs claim that the 2005 Form 10-KSB falsely stated that the financial reports had been prepared in conformity with GAAP. Plaintiffs also

contend that Bodisen's listing of "proprietary technology rights" as an intangible asset was false or misleading, as Bodisen did not possess any patent or have any patents pending.

On April 3, 2008, Bodisen published a press release reporting financial results and stating that the law firms of Jones Day and Reed Smith and the accounting firm of Deloitte and Touche had "complet[ed] extensive due diligence on [Bodisen's] business and financials" before Bodisen's listing on the AIM. (Id. ¶ 73.) Plaintiffs allege that this statement was false or misleading, as Jones Day, Reed Smith, and Deloitte and Touche did not complete extensive due diligence, because basic due diligence would have revealed Bodisen's internal control weaknesses and lack of compliance with GAAP.

On May 9, 2006, Bodisen published a press release announcing results for the first quarter ending March 31, 2006 in which Bodisen noted the revenue and growth for its "organic fertilizer" and Chen was quoted as touting Bodisen's "highly capable management team." (Id. ¶ 77.) Plaintiffs claim that these statements were materially false and misleading because Bodisen's products were not organic and Bodisen did not have a highly capable management team.

On or about May 9, 2006, Bodisen filed with the SEC its

10

1Q:06 Form 10-QSB for the quarter ending March 31, 2006, which was signed and certified by Wang and Lai. The filing contained similar statements attesting to Bodisen's GAAP compliance and internal controls, which Plaintiffs contend were false and misleading.

On August 11, 2006, Bodisen filed with the SEC a Registration Statement and joint Proxy-Prospectus pursuant to Form 424B3, which was signed by Wang, Chen, and Lai (the "August 2006 Registration Statement"). The August 2006 Registration Statement purported to list the security ownership of certain beneficial owners and management, including any holder of more than five percent of the outstanding common stock. Plaintiffs claim that the statements regarding beneficial ownership were false and misleading because Bodisen either did not know or actively concealed the identities of those with 10 percent or greater beneficial ownership in Bodisen.

On August 14, 2006, Bodisen published a press release announcing financial results and in which Chen stated that Bodisen was the "leading premium organic fertilizer brand throughout China." (Id. ¶ 86.) Plaintiffs claim that this statement was false and misleading because Bodisen's products were not organic.

On or about August 14, 2006, Bodisen filed with the SEC

its 2Q:06 Form 10-QSB for the quarter ending June 30, 2006, which was signed and certified by Wang and Lai. The filing contained similar statements attesting to Bodisen's GAAP compliance and internal controls, which Plaintiffs contend were false and misleading.

On October 18, 2006, Bodisen issued a press release announcing expected financial results. Plaintiffs contend that the press release was false and misleading because Bodisen failed to disclose the issues that had been raised in articles publsished by the New York Post, which are discussed below in Section I.B.4.

2.    Bodisen Defendants' Alleged Omissions

Bodisen relied on NYGG for public relations and promotion of its securities. NYGG describes itself as an expert of China-related matters that serves its primarily China-based clients in the areas of investments and financing, mergers and acquisitions, economic research, due diligence and background checks, import and export assistance, English translation, international trade negotiations, and strategic market entry consulting. NYGG's founder and controlling shareholder is Benjamin Wei ("Wei").

In Bodisen's February 6, 2006 press release, Wang was quoted as noting Bodisen's "increased visibility" in connection with the new AIM offering. (Id. ¶ 53.) Plaintiffs

claim that this statement was misleading, because Bodisen's increased visibility was due in part to the marketing efforts of NYGG, whose relationship to and payments received from Bodisen were not disclosed.

In the March 20, 2006 press release, Bodisen stated that NYGG acted as an advisor to Bodisen in connection with a private placement sale to institutional investors. Plaintiffs allege that this statement was misleading, as the exact nature of Bodisen's relationship with NYGG was not disclosed, nor was the purpose of any payments to NYGG.

In the press release issued March 28, 2006, Bodisen noted, as a "2005 Operational Highlight" that Bodisen had received research coverage from New York Global Securities ("NYGS"). (Id. ¶ 62.) Plaintiffs alleged that this statement was misleading, as Bodisen did not disclose its full relationship with NYGG, the parent company of NYGS.

In the 2005 Form 10-KSB, Bodisen stated it had no relationships or related party transactions. Plaintiffs allege that this statement was false and misleading because Bodisen failed to disclose its relationship with NYGG.

3.    Alleged Misrepresentations by Kabani

The February 2006 Registration Statement, the 2005 Form 10-KSB, and the August 2006 Registration Statement each contained a report by Kabani stating that it had performed an

audit in conformity with accounting principles generally accepted in the United States and concluded that Bodisen's consolidated financial statements fairly presented the consolidated financial position of Bodisen. Plaintiffs allege that these statements by Kabani were materially false or misleading because Bodisen's financials did not comply with GAAP because of internal control issues, non-disclosure of beneficial owners, and non-disclosure of its relationship with NYGG.

    4.  New York Post Reports on Bodisen

    The Complaint frequently references a series of articles published by the New York Post regarding NYGG and Bodisen. On May 1, 2006, the New York Post published an article (the "May 2006 Article") about NYGG that described Wei's prior disciplinary record with the National Association of Securities Dealers ("NASD"), which caused Wei to be fined and a temporarily barred from the industry. The May 2006 Article further noted that because Wei had never applied for reinstatement, he remained barred from soliciting investments from the public, promoting securities to potential investors, and exercising any direct control over an NASD-licensed firm engaged in such activity. The May 2006 Article also stated that the only information available on Bodisen in the United States was provided by NYGG, that NYGG was involved in two

14

other penny-stock reverse mergers of China-based companies, and that those two companies also used Kabani, an "obscure Los Angeles-based auditor." (Id. ¶ 23.)

The New York Post wrote follow-up articles on September 29, 2006 (the "September 2006 Article") and October 9, 2006 (the "October 2006 Article") regarding Wei's past and NYGG's relationship with Bodisen. The September 2006 Article further described Wei's troubles with securities regulators, and noted that NYGG was hired by Bodisen only after another firm had deemed Bodisen to be "un-auditable." (Id. ¶ 22.) The September 2006 Article stated that research reports issued by the brokerage division of NYGG did not disclose its relationship with Bodisen and that when Wei gave a presentation for Bodisen, he did not state that he was president of NYGG, and in fact, was instructed not to mention NYGG. The October 2006 Article issued a follow-up report on the relationship between Bodisen and NYGG, and reported that an "avalanche" of insider trading of Bodisen stock, with NYGG as the selling broker, had occurred days before Bodisen announced that it was terminating NYGG as its investment advisor. (Id. ¶ 24.)

The September 2006 Article also reported that although Bodisen used the term biotech in its name, its processes did not involve biotechnology, and the article quoted Wei as

15

stating that Chinese companies use the term biotech for anything associated with living things.

     5.    <u>Bodisen's Delisting by the AMEX and Post-Class Period Developments</u>

On November 12, 2006, Bodisen published a press release stating that it had received a letter from the AMEX expressing concern that Bodisen had internal control issues relating to its accounting and financial reporting obligations in the context of Bodisen's relationship with NYGG.

On November 13, 2006, Bodisen filed with the SEC, pursuant to Form 8-K, a statement that the AMEX had sent Bodisen a delisting letter, and that Bodisen intended to file a plan detailing the actions it had taken and would take to bring it in compliance with the AMEX listing standards.

On January 5, 2007, Wang announced that she would not stand for reelection to serve as Chairman, CEO, and President of Bodisen because of health and personal considerations.

On March 19, 2007, Bodisen's shares were suspended from trading on the AMEX and Bodisen issued a press release stating that it anticipated receiving a Notice of Delisting from the AMEX and would delay filing its annual Form 10-KSB.  The press release stated that Bodisen was required to provide certain information to the AMEX, but was unable to do so within the applicable time frame.  The press release also noted that Bodisen was providing updated information regarding share

16

ownership, specifically that held by Wang and Chen, and had "not yet determined whether or not the updated information impacts [Bodisen's] capitalization or creates a previously unstated [Bodisen] liability." (Id. ¶ 101.)

On March 27, 2007, Bodisen reported the AMEX's basis for delisting in a press release and detailed the basis for Bodisen's delisting, which included that (1) Bodisen's SEC filings contained "incomplete, misleading, and/or inaccurate disclosures regarding the beneficial ownership of its securities;" (2) Bodisen provided "incomplete, misleading, and/or inaccurate information regarding its relationship with and payments to a consultancy firm and its affiliates ... in applicable registration statements and periodic financial filings;" (3) Bodisen had "internal control weaknesses related to its account and financial reporting obligation which [rose] to the level of a public interest concern;" and (4) Bodisen "failed to consistently review and reconcile its shareholder ownership records with those of its transfer agent to ensure that its SEC filings and public disclosures were accurate." (Id. ¶ 30.)  The press release further noted that the AMEX found that Bodisen had "continuously reported in its SEC filings ... that certain officers ... held an aggregate of 40% ownership in the Company's common stock, notwithstanding that its transfer agent records were inconsistent with such reports

17

and disclosures." (Id.)

On June 24, 2007, Bodisen reported results for 1Q:07 and posted a 52.2 percent decline in sales for the quarter and a 53 percent decline in gross profit. The press release stated that the "decrease in revenue was due to the negative impact on the company's reputation as a result of Bodisen being delisted by the [AMEX]." (Id. ¶ 108.)

6. Bodisen's Stock Price

On November 3, 2005, Bodisen's stock closed trading at $7.01 per share. Bodisen's stock rose to $18.65 per share by close of trading on January 24, 2006, and reached $22.00, the highest price during the Class Period, on January 30, 2006.

Bodisen's stock closed trading at $17.99 per share on March 20, 2006 and $16.42 on April 3, 2006. On April 30, 2006, Bodisen's stock closed at $14.75 and dropped to $8.80 on May 1, 2006 before closing trading at $9.37.

Bodisen's stock traded below $9.00 per share on September 29, 2006 and October 9, 2006. Bodisen's stock price fell by 20 percent on both November 13, 2006 and November 14, 2006 and traded below $4.00 per share. On March 19, 2007, Bodisen's stock was trading at $3.36 per share when it was suspended from trading.

C.  PROCEDURAL HISTORY

Plaintiffs commenced the first suit affiliated with this

18

action on November 15, 2006.  By Order dated February 15,
2007, the Court consolidated eight separate actions against
Bodisen.  By Stipulation and Order dated August 13, 2007, the
Court appointed the Butterfield Trust Group as lead plaintiffs
and approved the selection of KGS and Federman & Sherwood as
Co-Lead Counsel for the Class.  Plaintiffs filed an amended
and consolidated complaint on November 16, 2007.  These
motions followed.

## II.  LEGAL STANDARD

### A.  STANDARD OF REVIEW

The task of a court in ruling on a motion to dismiss is
to "assess the legal feasibility of the complaint, not to
assay the weight of the evidence which might be offered in
support thereof."  In re Initial Pub. Offering Sec. Litig.,
383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005).  A court must accept
all well-pleaded factual allegations in the complaint as true,
and draw all reasonable inferences in the plaintiff's favor.
See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir.
2002).  However, mere "conclusions of law or unwarranted
deductions of fact" need not be accepted as true.  First
Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d
Cir. 1994) (citation and quotation marks omitted).  A court
should not dismiss a complaint for failure to state a claim if
the factual allegations sufficiently "raise a right to relief

19

above the speculative level." Bell Atl. Corp. v. Twombly, __
U.S. __, 127 S.Ct. 1955, 1965 (2007). Courts may consider any
documents that are attached to, referenced in, or integral to
the preparation of the pleadings. See Miller v. Lazard, Ltd.,
473 F. Supp. 2d 571, 578 (S.D.N.Y. 2007) (citing Chambers, 282
F.3d at 152-53).

B.    SECTION 10(b) AND RULE 10b-5 PLEADING STANDARDS

    To adequately state a cause of action for securities
fraud under § 10(b) and Rule 10b-5, a plaintiff must assert
facts showing that "the defendant made a false statement or
omitted a material fact, with scienter, and that plaintiffs'
reliance on defendant's action caused plaintiff injury."
Lazard, 473 F. Supp. 2d at 580 (quoting Kalnit v. Eichler, 264
F.3d 131, 138 (2d Cir. 2001)). In an action under § 10(b) and
Rule 10b-5, plaintiffs must allege a state of mind evidencing
"'an intent to deceive, manipulate or defraud.'" Id. (quoting
Ganino v. Citizens Utilities Co., 228 F.3d 154, 168 (2d Cir.
2000)).

    Securities fraud actions are subject to the heightened
pleading requirements of the PSLRA, as well as those of Rule
9(b). See id. (citing Kalnit, 264 F.3d at 138; Novak v.
Kasaks, 216 F.3d 300, 306 (2d Cir. 2000)). Pursuant to the
pleading standard of Rule 9(b), allegations of fraud must be
pled with particularity. Specifically, the complaint must:

(1) specify the statements that the plaintiff alleges were fraudulent, (2) identify the speaker, (3) indicate when and where the statements were made, and (4) explain why the statements were fraudulent. See Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). The PSLRA imposes a "nearly identical" heightened pleading standard when a plaintiff alleges a material misrepresentation or omission. Lazard, 473 F. Supp. 2d at 580 n.1.

### 1. Materially False or Misleading Statement or Omission

In pleading a securities fraud claim based on misrepresentations, a plaintiff must first allege that the defendant either made a materially false or misleading statement or omitted material information. See Acito v. IMCERA Group, 47 F.3d 47, 52 (2d Cir. 1995). Such allegations will not support a claim of securities fraud unless the defendant has a duty to disclose the information. The Second Circuit has held that "one circumstance creating a duty to disclose arises when disclosure is necessary to make prior statements not misleading." In re Time Warner, Inc. Sec. Litig., 9 F.3d 259, 268 (2d Cir. 1993).

An omission is material if there is a substantial likelihood that the "disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly

altered the 'total mix' of the information made available."
Id. at 267-68 (quoting TSC Indus., Inc. v. Northway, Inc., 426
U.S. 438, 449 (1976)).

    2.   Scienter

Pursuant to the PSLRA, a plaintiff can allege sufficient
facts to support a "strong inference" of the requisite state
of mind by "alleging facts to show that defendants had both
motive and opportunity to commit fraud" or by "alleging facts
that constitute strong circumstantial evidence of conscious
misbehavior or recklessness."  Kalnit, 264 F.3d at 138-39.
(quotation marks and internal citations omitted).  Courts in
the Second Circuit use a two-step approach for assessing the
sufficiency of pleadings with respect to scienter such that
(1) the pleadings must be evaluated first for facts
demonstrating either (i) motive and opportunity, or (ii)
conscious misbehavior or recklessness, and (2) the analysis of
such pleadings should incorporate the Second Circuit's case
law prior to and after the passage of the PSLRA.  See Lazard,
473 F. Supp. 2d at 580-81 (citing In re Alstom SA Sec. Litig.,
406 F. Supp. 2d 433, 446 (S.D.N.Y. 2005)).

In order to sufficiently allege motive, a plaintiff must
detail specific benefits that defendants could realize by
reason of at least one of the false statements or misleading
omissions claimed and assert concrete and individual gain to

each defendant resulting from the fraud.  See Novak, 216 F.3d at 307-08.  General motives that can be applied to "virtually all corporate insiders" or "any publicly owned, for profit endeavor" are not sufficient to support a claim of fraud.  Kalnit, 264 F.3d at 138-139.

Plaintiffs may also sufficiently allege scienter if the allegations show "strong circumstantial evidence of conscious misbehavior or recklessness."  Acito, 47 F.3d at 52. Under this theory, plaintiffs must allege reckless conduct which is, at a minimum, "highly unreasonable" and "represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  In re Carter-Wallace, Inc. Sec. Litig., 220 F.3d 36, 39 (2d Cir. 2000).

"In actions brought under Rule 10b-5, the contours of recklessness are not definite."  Lazard, 473 F. Supp. 2d at 581 (citing Novak, 216 F.3d at 308 ("Recklessness is harder to identify with precision and consistency.")).  Second Circuit case law that predates the PSLRA highlights factual allegations indicating that defendants (1) possessed knowledge of facts or access to information contradicting their public statements or (2) "failed to review or check information that they had a duty to monitor, or ignored obvious signs of

fraud." <u>Alstom</u>, 406 F. Supp. 2d at 447 (<u>quoting</u> <u>Novak</u>, 216
F.3d at 308).

    3.  <u>Causation</u>

Finally, to adequately state a claim for securities
fraud, a plaintiff must plead both transaction and loss
causation. <u>See</u> <u>First Nationwide Bank v. Gelt Funding Corp.</u>,
27 F.3d 763, 769 (2d Cir. 1994) (citing cases). Transaction
causation is similar to reliance and requires a showing
indicating that "but for the claimed misrepresentations or
omissions, the plaintiff would not have entered into the
detrimental securities transaction." <u>Lentell v. Merrill Lynch
& Co.</u>, 396 F.3d 161, 172 (2d Cir. 2005). Loss causation
requires a link between the alleged misconduct and the
ultimate economic harm suffered by the plaintiff; it is pled
through facts alleging that the plaintiff's loss was, at least
partially, caused by the defendant's conduct. <u>See</u> <u>Emergent
Capital Inv. Mgmt. v. Stonepath Group, LLC</u>, 343 F.3d 189, 197
(2d Cir. 2003). The Second Circuit has elaborated on the loss
causation element of securities fraud, indicating that a
plaintiff must claim that "the loss be foreseeable and that
the loss be caused by the materialization of the concealed
risk." <u>Lentell</u>, 396 F.3d at 173.

C.  <u>SECTION 20(a)</u>

Section 20(a) of the Securities Exchange Act provides:

24

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). In order to establish a prima facie case of liability under § 20(a), a plaintiff must show: (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) "that the controlling person was in some meaningful sense a culpable participant" in the primary violation. Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998) (quoting SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1472 (2d Cir. 1996)); see also Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 101 (2d Cir. 2001) (stating that "[c]ontrolling- person liability is a form of secondary liability, under which a plaintiff may allege a primary § 10(b) violation by a person controlled by the defendant and culpable participation by the defendant in the perpetration of the fraud").

## III. **DISCUSSION**

### A. BODISEN DEFENDANTS' MOTION TO DISMISS

Bodisen Defendants move to dismiss the Complaint on the grounds that, with regard to each claim, Plaintiffs failed to adequately plead (1) a material misrepresentation or omission;

(2) scienter; (3) loss causation; and (4) wrongdoing by the Individual Defendants.  The Court agrees that Plaintiffs have failed to adequately plead a material misrepresentation or omission in accordance with the heightened pleading standards of Rule 9(b) and the PSLRA.

### 1.   Relationship with NYGG

Bodisen Defendants argue that Bodisen did not have a duty to disclose its relationship with NYGG because NYGG was not a related party within the definition used by the SEC.  Under Rule 10b-5, silence absent a duty to disclose is not misleading.  Plaintiffs rely on SEC v. Enter. Solutions, Inc., 142 F. Supp. 2d 561, 574 (S.D.N.Y. 2001) and 17 C.F.R. § 229.404(d), for the proposition that Bodisen had a duty to disclose its relation with NYGG under the rule requiring the disclosure of all transactions involving promoters.  However, the regulations define a "promoter" as:

> (i) Any person who, acting alone or in conjunction with one or more other persons, directly or indirectly takes initiative in founding and organizing the business or enterprise of an issuer; or

> (ii) Any person who, in connection with the founding and organizing of the business or enterprise of an issuer, directly or indirectly receives ... 10 percent or more of any class of securities of the issuer or 10 percent or more of the proceeds from the sale of any class of such securities.

17 C.F.R. § 240.12b-2.  Plaintiffs do not allege that NYGG was involved in founding or organizing Bodisen or that NYGG

received the any payments in connection with the founding and organizing of Bodisen necessary to place NYGG within the regulatory definition of a promoter. Accordingly, the Court finds that 17 C.F.R. § 229.404(d) did not impose a duty on Bodisen to disclose its relationship with NYGG.

In the Complaint, Plaintiffs also note Financial Accounting Standards Board ("FASB") Statement of Financial of Accounting Standard ("SFAS") No. 57, which defines related parties to include:

> Affiliates of the enterprise ... principal owners of the enterprise; its management; members of the immediate families of principal owners of the enterprise and its management; and other parties with which the enterprise may deal if one party controls or can significantly influence the management or operating policies of the other to an extent that one of the transacting parties might be prevented from fully pursuing its own separate interests.

Plaintiffs do not allege that NYGG was an owner or manager of Bodisen, or that NYGG controlled or significantly influenced the management or operating procedures of Bodisen. Accordingly, FASB SFAS No. 57 does not provide a basis for imposing on Bodisen a duty to disclose its relationship or transactions with NYGG.

Plaintiffs also claim that because Bodisen mentioned NYGG in certain press releases and SEC filings, "[e]ach of these disclosures triggered a duty for Bodisen to disclose all other information regarding the NYGG/Bodisen relationship that would

27

be material to investors." (Lead Plaintiffs Opposition to Motion of Bodisen Defendants to Dismiss for Failure to State a Claim, dated Mar. 18, 2008 ("Pls.' Opp. to Bodisen") at 11.) Bodisen Defendants argue that Plaintiffs offer no authority to support this argument. However, the Court notes that "[a] duty to disclose arises whenever secret information renders prior public statements materially misleading ...." San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Companies, Inc., 75 F.3d 801, 810 (2d Cir. 1996) (quoting In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 268 (2d Cir. 1993)); see also Gross v. Summa Four, Inc., 93 F.3d 987, 992 (1st Cir. 1996) ("When a corporation does make a disclosure - whether it be voluntary or required - there is a duty to make it complete and accurate.").

Plaintiffs argue that Bodisen Defendants did not make "meaningful disclosures about the Company's close relationship with NYGG or We[i] and the material information about NYGG and We[i]'s troubling background that was concealed." (Pls.' Opp. to Bodisen at 11.) Bodisen Defendants argue that they disclosed the relationship in SEC filings and press releases by stating that NYGG had acted as an advisor to Bodisen for the purposes of, among other reasons, raising capital, and assisting with brand recognition, fund raising, and stock liquidity. Additionally, Bodisen Defendants assert that when

28

Bodisen issued a press release stating that NYGS had provided research coverage on Bodisen, it noted that NYGG was the parent company of NYGS.

Plaintiffs specifically claim that Bodisen Defendants should have disclosed information regarding Wei's background. However, Plaintiffs do not allege that Bodisen Defendants had any knowledge of Wei's prior disciplinary history. See Novak, 216 F.3d at 308 ("Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them.") Plaintiffs have otherwise failed to identify any specific information that Bodisen Defendants should have disclosed in order to make their statements regarding NYGG complete and not misleading.

Accordingly, the Court grants Bodisen Defendants' motion to dismiss Plaintiffs' claims regarding Bodisen's relationship with NYGG.

2.    Description of Products and Technology

Bodisen Defendants argue that Plaintiffs have failed to allege that its statements regarding "proprietary technology" and its descriptions of its products as "organic" and "biotech" and were misleading.

Plaintiffs claim that Bodisen's use of the term "proprietary technology" was misleading because Bodisen held no patents. Bodisen Defendants counter that Bodisen publicly

acknowledged that it held no patents, that the legal definition of proprietary technology is broader than simply holding a patent, and that this definition encompasses its confidential manufacturing process. The Court agrees. Legal protections extend not just to patents, but also to trade secrets, which may include: "any formula, pattern, device or compilation of information which is used in one's business, and which gives [one] an opportunity to obtain an advantage over competitors who do not know or use it." Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990) (quoting Restatement of Torts § 757, comment b). Because Plaintiffs rely solely on Bodisen's lack of patents, Plaintiffs have failed to allege that Bodisen Defendants' use of the term proprietary technology was false or misleading. Accordingly, Plaintiffs' claim based on Bodisen Defendants' use of the term "proprietary technology" is dismissed.

Plaintiffs state that "Bodisen's repeated use of the term 'biotech' was materially false and misleading." (Pls.' Opp. to Bodisen at 13.) However, Plaintiffs' only factual allegation is that Bodisen used the term biotech in its name and that a newspaper article stated "Bodisen isn't biotech." (Compl. ¶ 26.) Plaintiffs fail to allege in any detail how this use was false or misleading, but rather, rely on

conclusory statements in the Complaint.  Plaintiffs do not define biotech nor demonstrate how Bodisen Defendants' use of the term was incorrect.  Accordingly, Plaintiffs have failed to satisfy their pleading burden of explaining why the statements were fraudulent.  See Cosmas, 886 F.2d at 11; see also Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 2004) ("[P]laintiffs must do more than say that the statements in the press releases were false and misleading; they must demonstrate with specificity why and how that is so.").

Plaintiffs allege that Bodisen Defendants falsely described their products as organic, when Wei admitted in a the September 2006 Article that the products are not organic as defined by United States and European standards. Defendants respond that the products were used solely in China, and therefore significance of the term "organic" to investors was based on its use in China, not in the United States.

Plaintiffs fail to articulate their definition of organic, and do not make any specific statements as to how Bodisen's products fail to comply with any standard definition of organic, but rather, rely solely on a statement attributed to Wei that he did not believe the products were organic. Plaintiffs have thus failed to satisfy their pleading burden of demonstrating why the statements were fraudulent.  Id.

31

3.  <u>Beneficial Ownership, Internal Controls and GAAP Compliance</u>

Plaintiffs' claims regarding beneficial ownership, internal controls, and GAAP compliance can be analyzed together, as Plaintiffs' allegations are that Bodisen Defendants falsely reported Bodisen's beneficial ownership, and because of this, statements regarding adequate internal controls and compliance with GAAP were also false and misleading.[2]

Bodisen Defendants move to dismiss this claim arguing that Plaintiffs have not alleged how the statements regarding beneficial ownership were false, but rather, rely on the AMEX letter, which stated that Bodisen's beneficial ownership records did not match that of its transfer agent.  The Court agrees.

Plaintiffs have not alleged exactly which statements regarding beneficial ownership were false nor explained how the statements were false, but instead rely on vague and conclusory statements that are not supported by any specific factual allegations.  Plaintiffs use of large block quotes

---

[2] Plaintiffs also claim that the internal controls and GAAP compliance statements were false because Bodisen failed to disclose its relationship with and payments to NYGG.  Because the Court held above that Bodisen had no duty to disclose this information, the Court will not address Plaintiffs' internal controls and GAAP compliance arguments relying on the failure to disclose Bodisen's relationship with NYGG.

from SEC filings and press releases, followed by generalized explanations of how the statements were false or misleading are not sufficient to satisfy the heightened pleading requirements. See In re Sina Corp. Sec. Litig., No. 05 Civ. 2514, 2006 WL 2742048, at *6 (S.D.N.Y. Sept. 26, 2006). Additionally, Plaintiffs do not explain how the reported beneficial ownership differs from that recorded by Bodisen's transfer agent, why such statements were false and misleading, and how this circumstance renders false Bodisen Defendants' statements regarding GAAP compliance and adequate internal controls. See In re Scottish Re Group Sec. Litig., 524 F. Supp. 2d 370, 378 (S.D.N.Y. 2007) (denying motion to dismiss where four confidential witnesses, who were former employees of the defendant, asserted precisely the controls the defendant was lacking, and how that impacted the defendant's ability to function as an insurance company). The AMEX letters upon which Plaintiffs rely are not sufficient, as they lack the particularity required by Rule 9(b) and the PSLRA. Such allegations are not sufficient to satisfy the pleading standard, because "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim." Novak, 216 F.3d at 309.

Thus, Plaintiffs have failed to plead with particularity their claims regarding beneficial ownership, internal

controls, and GAAP compliance.  Accordingly, Plaintiffs claims on these bases are dismissed.

4.    Plaintiffs' Section 20(a) Claim

Because Plaintiffs failed to allege a primary violation of Section 10(b), the Complaint does not satisfy the first element of a prima facie Section 20(a) claim.  Accordingly, Plaintiffs' Section 20(a) claim is dismissed.

B.    KABANI'S MOTION TO DISMISS

Plaintiffs allege that Kabani falsely stated that Bodisen's financial reports were prepared in conformity with GAAP, when they were not because of the failure to disclose material related party transactions, the failure to review and reconcile shareholder ownership records, and the failure to maintain adequate internal accounting controls.

Kabani moves to dismiss on the grounds that (1) NYGG was not a related party; and (2) the alleged misstatements occurred in unaudited portions of the SEC filings for which management, and not Kabani, were responsible.  The Court agrees.

1.    Related Party Transactions

Because the Court held above that Bodisen was not required to disclose its relationship with NYGG as a related party transaction, Plaintiffs' claim regarding Kabani's misstatements or omissions based on this argument must

34

necessarily fail as well.

2.   Beneficial Ownership and Internal Controls

As held above, Plaintiffs' internal controls and
beneficial ownership claims against Bodisen Defendants fail to
satisfy the heightened pleading requirements of Rule 9(b) and
the PSLRA. Therefore, Plaintiffs' claims against Kabani based
on these same allegations must necessarily fail as well.
However, even if Plaintiffs had sufficiently alleged that
Bodisen had misrepresented its beneficial ownership and
internal controls, Plaintiffs' claim against Kabani would fail
because Plaintiffs failed to identify a material
misrepresentation of Bodisen's financial condition in its
audited financial statements. See In re Ramp Corp. Sec.
Litig., No. 05 Civ. 6521, 2006 WL 2037913, at *8 (S.D.N.Y.
July 21, 2006). Without a materially false statement in the
company's financial statements, the quality of the audit
performed by Kabani is immaterial. See id. "Compliance with
GAAP is relevant only insofar as it provides the investing
public with a level of assurance that the financial statements
accurately reflect the company's financial position when
measured against [GAAP]." Id. (citing In re WorldCom Sec.
Litig., 352 F. Supp. 2d. 472, 495 (S.D.N.Y. 2005); In re
WorldCom Sec. Litig., 346 F. Supp. 2d. 628, 664 (S.D.N.Y.
2004)). If the financial statements accurately disclose the

financial condition when measured against GAAP, then the investing public has received all that it is entitled to receive from the auditor certifying its audit of those financial statements. See id.

Accordingly, Kabani's motion to dismiss pursuant to Rule 12(b)(6) is granted.

C.    DEFENDANTS' MOTION TO STRIKE

Defendants' move to strike Plaintiffs' allegations based on the AMEX delisting notices pursuant to Rule 12(f). Under Rule 12(f) a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. Generally, motions to strike are viewed with disfavor and infrequently granted. See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (citing Eskofot A/S v. E.I. Du Pont De Nemours & Co., 872 F. Supp. 81, 93 (S.D.N.Y. 1995)).

Defendants rely on Lipsky v. Commonwealth United Corps., 551 F.2d 887 (2d Cir. 1976), for the proposition that Plaintiffs may not rely on the AMEX's delisting letters because the letters were not based on findings of fact resulting in a final adjudication. Defendants' reliance is misplaced, as Lipsky referred to the use of a consent decree as collateral estoppel, and Courts have found that such evidence may be used as part of the factual background of a

36

case.  See ClearOne Commc'n, Inc. v. Lumbermens Mut. Cas. Co.,
No. 04 Civ. 119, 2005 WL 2716297, at *8 n.10 (D. Utah Oct. 21,
2005).

The Court finds that Plaintiffs' use of Bodisen's press
releases, which quote the AMEX letters, was not "redundant,
immaterial, impertinent, or scandalous."  Rule 12(f).
Accordingly, Defendants' motion to strike allegations in the
Complaint pursuant to Rule 12(f) is denied.

D.    LEAVE TO REPLEAD

When a cause of action is dismissed because of pleading
deficiencies, the usual remedy is to permit plaintiff to
replead his or her case.  See Fed. R. Civ. P. 15(a) ("Rule
15(a)").  Whether to permit a plaintiff to amend his pleadings
is a matter committed to the Court's "sound discretion."
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir.
2007).  Rule 15(a) provides that leave to amend a complaint
"shall be freely given when justice so requires."  Fed. R.
Civ. P. 15(a).  In particular, regarding claims of fraud,
"[p]laintiffs whose complaints are dismissed pursuant to Rule
9(b) are typically given an opportunity to amend their
complaint."  Olsen v. Pratt & Whitney Aircraft Div. of United
Techs. Corp., 136 F.3d 273, 276 (2d Cir. 1998) (citing Luce v.
Edelstein, 802 F.2d 49, 56 (2d Cir. 1986)); see also Lazard,
473 F. Supp. 2d at 590 (stating that leave to replead is

"especially appropriate when claims are dismissed under Rule 9(b) because the law favors resolving disputes on their merits").

Bodisen Defendants argue that Plaintiffs should be denied leave to replead. At this stage, the Court finds such a course premature, especially where Plaintiffs' claims are dismissed for lack of particularity. Therefore, Bodisen Defendants' request to deny leave to replead is denied.

## IV. <u>ORDER</u>

Accordingly, it is hereby

**ORDERED** that the motion of defendants Bodisen Biotech, Inc., Bodisen, Bo Chen, Wang Chunsheng, Karen Quiong Wang, and Yiliang Lai (Docket No. 46) to dismiss the Consolidated Amended Class Action Complaint herein pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED; and it is further

**ORDERED** that the motion of defendant Kabani (Docket No. 49) to dismiss the Consolidated Amended Class Action Complaint herein pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED; and it is further

**ORDERED** that the motion of defendant Kabani (Docket No. 49) to strike allegations from the Complaint pursuant to Federal Rule of Civil Procedure 12(f) herein is DENIED; and it is and it is finally

**ORDERED** that Plaintiffs are granted leave to file, by not

38

later than twenty (20) days from the date of this Order, an amended complaint repleading any of the claims dismissed herein.

All motions entered in the docket sheets for related and consolidated cases, 06 Civ. 13567, 06 Civ. 15399, 06 Civ. 13254, 06 Civ. 13454, 06 Civ. 13567, 06 Civ. 13739, 06 Civ. 14449, 06 Civ. 15179, 06 Civ. 13739, 06 Civ. 13454, 06 Civ. 14449, 06 Civ. 13254, and 06 Civ. 15179, should similarly be removed from the Court's docket.

**SO ORDERED**

Dated:    New York, New York
          18 September 2008

VICTOR MARRERO
U.S.D.J.

39